105 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge Rivera CONTRERAS, Defendant-Appellant.
 No. 96-30034.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1996.
Decided Dec. 30, 1996.
 
 Before: CANBY, RYMER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jorge Rivera Contreras pleaded guilty to a single count of possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841, and was sentenced to 87 months imprisonment followed by four years of supervised release. Contreras now appeals his conviction and sentence on a variety of grounds. His arguments concerning the computation of his sentence are without merit; nevertheless, because the district court failed to inform him, as required by Fed.R.Crim.P. 11(e)(2), that he would not be able to withdraw his guilty plea if the district court rejected the government's sentencing recommendations, we vacate his sentence and remand for a new plea proceeding.
 
 I.
 
 3
 Because the parties are familiar with the facts of this case, we repeat them here only as necessary.
 
 II.
 
 4
 Contreras argues that the probation officer's decision to test the purity of the methamphetamine violated Fed.R.Crim.P. 32 and Article III of the United States Constitution. Contreras' arguments are without merit.
 
 
 5
 A. Fed.R.Crim.P. 32.
 
 
 6
 With regard to the application of the United States Sentencing Guidelines, Fed.R.Crim.P. 32(b)(4)(B) (1996) limits the role of a probation officer to:
 
 
 7
 the classification of the offense and of the defendant under the categories established by the Sentencing Commission under 28 U.S.C. § 994(a), as the probation officer believes to be applicable to the defendant's case; the kinds of sentence and sentencing range suggested by such a category of offense committed by such a category of defendant as set forth in the guidelines issued by the Sentencing Commission under 28 U.S.C. § 994(a)(1); and the probation officer's explanation of any factors that may suggest a different sentence--within or without the applicable guideline--that would be more appropriate, given all the circumstances.
 
 
 8
 Contreras initially contends that the probation officer's decision to test the purity of the methamphetamine violated Fed.R.Crim.P. 32. Contreras cites United States v. Belgard, 894 F.2d 1092 (9th Cir.), cert. denied, 498 U.S. 860 (1990), in which this court noted that "[t]he probation officer's duty is to compile information which then takes the form of a neutral written recommendation to the judge," id. at 1097, and that "[t]he probation officer is not the decision-maker." Id. According to Contreras, the probation officer violated both elements of Belgard, because, in deciding to test the drug evidence for purity, he (1) "undertook an unabashed, prosecutorial function designed to increase Mr. Rivera Contreras' punishment," and (2) usurped the district court's authority as the ultimate decision-maker in the case.
 
 
 9
 With regard to the first contention, Contreras' reliance on Belgard is misplaced. As we stated in Belgard, the probation officer's purpose "is still to provide the trial judge with as much information as possible in order to enable the judge to make an informed decision." Id. (emphasis added). That is precisely what occurred in this case: the probation officer took steps to ensure that Judge Hogan did not sentence Contreras on the basis of incomplete and, from the standpoint of the sentencing guidelines, inaccurate evidence. The probation officer's decision to test the methamphetamine for purity was, then, well within the limits of Belgard 's mandate to probation officers.
 
 
 10
 Contreras' second claim is also incorrect. Even if it is true, as Contreras argues, that the district court was compelled by U.S.S.G. § 2D1.1 to sentence him on the basis of actual methamphetamine once the probation officer disclosed the results of the purity test, it does not follow that, by ordering the test, the probation officer usurped the district court's authority as the ultimate decision-maker in the case. By that logic, a probation officer could not disclose in his or her presentence report any fact not previously known to the district court without usurping the district court's authority. Such a rule, however, would ignore the mandate of Fed.R.Crim.P. 32 that probation officers explain "any factors that may suggest a different sentence--within or without the applicable guideline--that would be more appropriate, given all the circumstances." It also would contradict our ruling in Belgard that "[w]hile probation officers will now [under the guidelines] have to total up points based upon the facts they develop, that is far from prosecution." See Belgard, 894 F.2d at 1098 (emphasis added).
 
 
 11
 B. Due Process.
 
 
 12
 Contreras also argues that, "[a]ssuming that Rule 32 authorizes a probation officer to assume the duties and powers of a drug enforcement officer or other agent of the executive branch," Rule 32 violates Article III, Section 1, of the Constitution. Because we have concluded that Fed.R.Crim.P. 32 does not authorize a probation officer to assume the duties and powers of any agent of the executive branch, we reject Contreras' Article III argument.
 
 III.
 
 13
 Contreras argues that the government breached its plea agreement with him by allowing law-enforcement officers answerable to the Office of the United States Attorney to turn over the drug evidence to the probation officer, and by insisting at sentencing that Contreras should be sentenced on the basis of "actual methamphetamine," when it had agreed to recommend sentencing on the basis of a "mixture or substance containing a detectable amount of methamphetamine." Contreras' argument is meritless with respect to both alleged breaches.
 
 
 14
 First, the government did not breach its plea agreement with Contreras when its law-enforcement agents submitted the methamphetamine for testing at the probation officer's direction. As we explained above, the probation officer's decision to test the methamphetamine for purity was within his mandate under Fed.R.Crim.P. 32. The government, therefore, was under no obligation to refuse the probation officer access to the methamphetamine.
 
 
 15
 Second, the government did not breach the plea agreement by insisting at sentencing that Contreras should be sentenced on the basis of "actual methamphetamine," when it had agreed to recommend sentencing on the basis of a "mixture or substance containing a detectable amount of methamphetamine." In fact, the Assistant United States Attorney who appeared at Contreras' sentencing stood behind the government's original plea agreement: "We are recommending the sentence as to all of the--I don't have the specific exhibit number. But all of the drugs, but based upon a mixture [or] substance. "
 
 IV.
 
 16
 Contreras argues that the evidence in the record is insufficient to support the district court's finding that, for sentencing purposes, he was responsible for 329.14 grams of methamphetamine. The probation officer arrived at that amount by combining the methamphetamine taken from Contreras' sock with the methamphetamine found in his Springfield residence. Contreras contends, that the government did not prove that the methamphetamine found in his residence belonged to him.
 
 
 17
 Contreras' contention is without merit. We review a district court's findings of fact for clear error. United States v. Turner, 898 F.2d 705, 708 (9th Cir.1990), cert. denied, 495 U.S. 962. Here, given the significant evidence indicating that the methamphetamine in the Springfield residence belonged to Contreras, we cannot say that the district court clearly erred in finding that Contreras was responsible for the 329.14 grams of methamphetamine. First, Jack Anderson identified Contreras by name as his methamphetamine supplier, and Contreras admitted to having been in the business of selling methamphetamine for three or four months. Second, there was no evidence linking Contreras' roommate to the methamphetamine, whereas $6750 in cash was found in Contreras' bedroom. Third, the purity of the methamphetamine found on Contreras' person matched the purity of the methamphetamine found in the Springfield residence.
 
 V.
 
 18
 Contreras argues that he is entitled to withdraw his guilty plea because the district court failed to inform him, as required by Fed.R.Crim.P. 11(e)(2), that he would not be permitted to withdraw his plea if the court rejected the government's plea-agreement recommendations. Contreras' plea was entered pursuant to Fed.R.Crim.P. 11(e)(1)(B). Unlike pleas entered pursuant to Fed.R.Crim.P. 11(e)(1)(A) or (C), such pleas cannot be withdrawn once made. United States v. Graibe, 946 F.2d 1428, 1432 (9th Cir.1991), cert. denied, 115 S.Ct. 134 (1994). For that reason, Rule 11(e)(2) states that "the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2) (emphasis added). Failure to give that warning to a defendant who otherwise does not know his rights is plain error. Graibe, 946 F.2d at 1433.
 
 
 19
 The government conceded at oral argument that the district court committed plain error when it failed to inform Contreras that he would not be permitted to withdraw his plea if it rejected the government's plea-agreement recommendations. We thus vacate Contreras' sentence and remand for a new plea proceeding.
 
 
 20
 We note, however, that Contreras is not entitled to a new plea agreement based on the government's original sentencing recommendations. As we explained earlier, the government fulfilled its obligations under the plea agreement, because it recommended to the district court that Contreras be sentenced for a "mixture or substance containing a detectable amount of methamphetamine," despite the probation officer's evidence to the contrary. The government, therefore, is under no obligation to offer Contreras the same or a similar plea agreement on remand.
 
 VI.
 
 21
 Finally, Contreras argues that, because "Judge Hogan would have substantial difficulty in putting out of his mind the drug testing results" on remand, his sentence should be vacated and remanded to a different Judge. Contreras asserts that reassignment is appropriate when there has been a breach of a plea agreement. See Santobello v. New York, 404 U.S. 257, 262-63 (1971). No reassignment is called for here.
 
 CONCLUSION
 
 22
 Contreras' arguments concerning the computation of his sentence are without merit. Nevertheless, because the district court failed to inform him, as required by Fed.R.Crim.P. 11(e)(2), that he would not be able to withdraw his guilty plea if it rejected the government's sentencing recommendations, we VACATE his conviction and sentence and REMAND to the district court for a new plea proceeding.
 
 
 23
 VACATED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3