*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

No. 05-4196

HATEM MAHMOUD HAMAD,

*Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 05-00074—David D. Dowd, Jr., District Judge.

Argued: April 25, 2007

Decided and Filed: July 19, 2007

Before: GILMAN and SUTTON, Circuit Judges; TARNOW, District Judge.[*]

---

**COUNSEL**

**ARGUED:** David C. Jack, Wadsworth, Ohio, for Appellant. Mark S. Bennett, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. Douglas A. Berman, THE OHIO STATE UNIVERSITY, MORITZ COLLEGE OF LAW, Columbus, Ohio, as court-appointed Amicus Curiae. **ON BRIEF:** David C. Jack, Wadsworth, Ohio, for Appellant. Vasile C. Katsaros, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. Douglas A. Berman, THE OHIO STATE UNIVERSITY, MORITZ COLLEGE OF LAW, Columbus, Ohio, as court-appointed Amicus Curiae.

---

**OPINION**

---

SUTTON, Circuit Judge. What happens when a district court, applying the advisory sentencing guidelines, not only increases a sentence based on its own fact findings but also does so on the basis of evidence never fully disclosed to the criminal defendant? One reading of Rule 32 of the Federal Rules of Criminal Procedure would authorize this procedure; another would not. Because the escalation of a sentence based on undisclosed evidence raises serious due process concerns, we construe the rule to require a sentencing court either to disclose sufficient details about

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

the evidence to give the defendant a reasonable opportunity to respond or, failing that, to refrain from relying on the evidence. We vacate Hatem Hamad's sentence and remand for resentencing.

I.

When Warren County (Ohio) police officers responded to the scene of a reported fight, they met Nick Loomis, who claimed that he had just been stabbed by his neighbor, Hatem Hamad. At Hamad's nearby residence, the officers met Hamad's wife, who told them that her husband kept weapons in the home—two, to be exact, a semi-automatic pistol and a shotgun.

A federal grand jury indicted Hamad for (1) violating the felon-in-possession statute (he previously had been convicted of distributing cocaine), *see* 18 U.S.C. § 922(g)(1), and (2) failing to register a shotgun with a barrel shorter than 18 inches, *see* 26 U.S.C. § 5861(d). Hamad pleaded guilty to both offenses.

The district court scheduled Hamad's sentencing hearing for August 2, 2005. A day before the hearing, the court postponed it, explaining that the court had received "in chambers a number of documents that reflect poorly on the defendant." JA 20. The documents, the court noted, "were submitted with a request that the information be kept confidential." In an effort to comply with Criminal Rule 32, which permits the submission of confidential information at sentencing as long as the court provides a summary of the information to the defendant and gives him a reasonable opportunity to respond, *see* Fed. R. Crim. P. 32(d)(3)(B) & 32(i)(1)(B), the district court provided the following summary of the documents:

> In a general sense, the documents describe a man who has been violent with his own wife and children, threatens harm to other persons, treats his wife as an inferior person because of her gender and should be considered a dangerous man. The information supplied predicts that when the defendant is released from confinement and rejoins society he will continue to be abusive to his family and will come to a new neighborhood with no warning signs.

*Id*.

Also attached to the court's order was a public letter jointly written by Warren's Mayor and its Director of Public Service and Safety. The letter described Hamad as "a menace and a threat to the lives of the many good and law-abiding citizens in [their] community," noted that "[t]here ha[d] been several incidents where Hatem Hamad [had] demonstrated his abusive and violent temperament by inflicting harm to others without remorse" and requested that the court sentence him "to a lengthy and extended incarceration." JA 22.

After receiving this information, the district court indicated that it was considering imposing a sentence above the 41–51 month guidelines range, rescheduled the sentencing hearing and placed the documents under seal.

Hamad moved to disclose the full contents of the documents, arguing that the court's reliance on them to increase his sentence would violate Criminal Rule 32 and, if not that, the Federal Constitution. Reasoning that its prior order provided "a fair summary" of the information, as required by Criminal Rule 32, and that "a failure to provide a more thorough disclosure would not be prejudicial" to Hamad, the district court denied the motion. JA 45. At the same time, it offered to disclose the documents to Hamad's counsel and the government in camera on the condition that counsel "not reveal the particulars of the accusations in such a manner as to identify the person or persons supplying [the] information." *Id*.

Hamad's counsel declined the offer, explaining that he could not adequately rebut the evidence if he could not discuss it with Hamad. Without additional information, counsel observed, Hamad would not be able to tell him that, say, "Jim Blow is a crack head who [has] had it in for me since day one" and, even if counsel could satisfactorily investigate the information contained in the documents himself, he could not present the fruits of any investigation in court if it "might arguably reveal to my client" that the "information . . . might have come from Jim Blow." JA 55–56. The district court repeated its view that the summary was "adequate to prepare [Hamad] for the sentencing hearing," JA 58, but recognized that "there is a great deal more that's contained here that [counsel did] not have," JA 53.

At the hearing, counsel noted that Hamad's wife and children were there to support him. Although counsel offered to let the court question them in chambers, he declined to offer their testimony. In addressing the mayor's letter, counsel noted that the mayor must have relied on second-hand information in writing the letter because Hamad and the mayor had never met and the Warren police had never arrested Hamad. Hamad testified that he was a good husband and father, that he did not view women as inferior, that it bothered him that people were making false allegations about him and that, since the September 11, 2001 terrorist attacks, he had been targeted unfairly because he is a Muslim. Hamad's counsel recommended a sentence at the bottom of the 41–51 month range.

The district court sentenced Hamad to 48 months' imprisonment. "[T]o be very clear," the court acknowledged, it had "taken into consideration materials that [were] under seal, and ha[d] relied upon them in the exercise of [its] discretion within the advisory guideline range." JA 97. The district court denied Hamad's motion to unseal the confidential documents during appeal and ordered the clerk to send the sealed documents to the Sixth Circuit.

On appeal, our court initially slated the case for disposition without oral argument. In view of the district court's candid acknowledgment that it had relied on the sealed documents presented to the court and in view of the question whether Criminal Rule 32 authorizes this procedure, or indeed whether the United States Constitution permits it, we scheduled the case for oral argument. We also appointed Douglas A. Berman, Esq., a Professor of Law at the Moritz College of Law at The Ohio State University, as an *amicus curiae* to offer written and oral presentations about the appropriate resolution of the appeal. We are grateful for his assistance and, as always, for the assistance provided by counsel for both parties.

II.

A.

Two provisions of Criminal Rule 32 have a direct bearing on this appeal. "The presentence report," Rule 32(d)(3) says, "must exclude":

> (A) any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;
>
> (B) *any sources of information obtained upon a promise of confidentiality*; and
>
> (C) any other information that, if disclosed, might result in physical or other harm to the defendant or others.

(Emphasis added.) Rule 32(i)(1)(B) says that a sentencing court "must give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information

excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information."

Under one reading of these provisions, the district court did all that Criminal Rule 32 asks of it. The court correctly recognized that the rule applies even when confidential information is given directly to the district court, as opposed to the probation department. *See United States v. Hayes*, 171 F.3d 389, 393–94 (6th Cir. 1999). Although Rule 32(e)(2) deals expressly only "with the right to review the presentence investigation report," *Hayes* explained that "the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by Rule 32 . . . ." *Id.* at 392; *see also id.* at 394 (recognizing that district courts need not always funnel *ex parte* information through the probation department, particularly when "the court receives [information] after the presentence report has been prepared").

The court, at first glance, also appears to have complied with the requirements of these provisions. It did not disclose the confidential information. *See* Fed. R. Crim. P. 32(d)(3)(B). It provided a "written summary" of the confidential information to the parties. *See* Fed. R. Crim. P. 32(i)(1)(B). And by all appearances it gave Hamad all the notice and time he needed to respond—what the rule refers to as a "reasonable opportunity to comment." *See* Fed. R. Crim. P. 32(i)(1)(B). Having reviewed the confidential documents ourselves, we can add that the court accurately summarized them and that, had the court been more specific about the contents of the documents, it would have risked exposing the sources of the information. *Cf. United States v. Scalzo*, 716 F.2d 463, 466 (7th Cir. 1983) ("The trial court must, on a case by case basis, balance the policy of making disclosure as specific as possible with the need to preserve confidentiality.") (internal quotation marks omitted); *United States v. Woody*, 567 F.2d 1353, 1362 (5th Cir. 1978) ("In some cases, because of the need to protect sources . . . the summary may be very general and of little help to the defendant in either providing additional information or in commenting on the substance of the report or challenging its factual accuracy.") (internal quotation marks omitted).

But the district court's interpretation of these rules is not the only plausible reading of them, and it is not the one we adopt. *First*, as applied to this case, the district court's sentencing procedure raises serious constitutional concerns—even if the required summary was as accurate and as specific as it could be without disclosing its sources and even if the defendant was given as much time as he wished and as many witnesses as he needed to respond to the summary. The fact remains that the court did not—and could not—disclose sufficient information to allow the defendant to counter or test the reliability of this evidence that he was a dangerous person and a blight on the community, and the fact remains that the court relied on this information in increasing his sentence.

A sentencing hearing, we recognize, is not a criminal trial, and many of the constitutional requirements of a criminal trial do not apply at sentencing. *See Williams v. New York*, 337 U.S. 241 (1949). The Rules of Evidence do not apply at sentencing, *see* Fed. R. Evid. 1101(d)(3), and due process does not require otherwise, *Williams*, 337 U.S. at 251 ("The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure."). Congress prefers the inclusion rather than the exclusion of information at sentencing, *see* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."), a preference that during most of the twentieth century led the courts and the rules' drafters to favor the completeness of information presented at sentencing over its accuracy. *See* Stephen A. Fennell & William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1615, 1632–35 (1980).

While the Constitution requires evidence submitted at a criminal trial to be assessed under a "beyond a reasonable doubt" standard, *In re Winship*, 397 U.S. 358, 364 (1970), it could be said

as late as 1986 that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986). The right to confront adverse witnesses and to prohibit the introduction of testimonial hearsay without cross-examination does not apply at sentencing. *See United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006); *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc); *see also Williams*, 337 U.S. at 250 ("The type and extent of [sentencing] information make totally impractical if not impossible open court testimony with cross-examination.") (applying the Due Process Clause at a time when the Court had not yet incorporated the Confrontation Clause); *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959). Until the amendment of Criminal Rule 32 in 1975, the Criminal Rules did not make the disclosure of a presentence report to the defendant mandatory, *see* Federal Rules of Criminal Procedure Amendments Act of 1975, Pub. L. 94-64, § 2, 89 Stat. 370, and our court (and several other courts of appeals) upheld the validity of this procedure in the face of due process challenges. *See United States v. Lowe*, 482 F.3d 1357, 1359 (6th Cir. 1973) (*per curiam*) (citing cases). Even the *Apprendi-Blakely-Booker* right to have a jury make fact findings used to increase a sentence, which by its terms does apply at sentencing, does not cover this case because the judge did not apply his findings of fact to a mandatory guidelines system. *See United States v. Booker*, 543 U.S. 220, 245 (2005).

While many of the protections, constitutional or otherwise, that guard a criminal defendant's procedural rights at trial have not historically applied at sentencing or to this type of case, that does not end the inquiry. Most of these decisions applied to a different sentencing regime from the one we consider today. Today, district courts face an elaborate set of sentencing guidelines under which a district court must compute a recommended guidelines range and consider, if not necessarily follow, that recommendation—and relief from those sentences through parole is the exception, not the rule. Then, district courts sentenced individuals under an utterly indeterminate sentencing regime and were not required to make fact-based sentencing computations in determining a sentence—and relief from those sentences through parole was the rule, not the exception. Under today's system, it remains unclear whether the Constitution gives sentencing courts a free hand to rely on undisclosed—or, to be more dramatic, secret—accusations that increase an individual's sentence. When the Court in *Williams v. New York* determined that the Constitution does not give a criminal defendant the right to cross-examine witnesses against him at sentencing, it was careful to point out that this did not mean that "sentencing procedure[s] [are] immune from scrutiny under the due-process clause." *Williams*, 337 U.S. at 252 n.18. Other cases prove the point. *See, e.g.*, *Mempa v. Rhay*, 389 U.S. 128, 137 (1967) (due process right to counsel at sentencing); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (due process right to obtain evidence favorable to the accused, held by the government and "material either to guilt *or to punishment*") (emphasis added); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (due process right to ensure that sentence was not based upon "assumptions concerning [defendant's] criminal record which were materially untrue"); *cf. Gardner v. Florida*, 430 U.S. 349, 362 (1977) (plurality) (qualifying *Williams v. New York* in the context of capital cases and holding that defendant had a due process right not to receive a death sentence based on information that he "had no opportunity to deny or explain").

The upshot is this: while a defendant may not have the constitutional right to *confront* the witnesses against him at sentencing, it remains unclear under modern sentencing practices what due process right he has to *know* who these witnesses are and what they have said, to *respond* meaningfully to the accusations or otherwise to *ensure* that the accusations are accurate. Although "[t]he district court may consider hearsay evidence in determining a sentence, . . . the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process." *Silverman*, 976 F.2d at 1512 (internal quotation marks and emphasis omitted); *see Scalzo*, 716 F.2d at 466 (noting the "fundamental and undisputed" due process "right of a defendant to be sentenced on the basis of accurate information").

*Second*, we need not determine the scope, or even the existence, of this due process right nor whether the district court violated it by increasing Hamad's sentence based on confidential accusations. When a court faces two plausible interpretations of a law, it may—indeed must—resolve the ambiguity on the basis of the interpretation that sidesteps rather than precipitates resolution of the constitutional question. *See Jones v. United States*, 529 U.S. 848, 858 (2000) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.") (internal quotation marks omitted); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *Califano v. Yamaski*, 442 U.S. 682, 693 (1979). Otherwise, the court would be attributing to the lawmakers an intention to adopt a statute (or rule) that implicates a serious question about limits on their authority rather than attributing to them the more respectful intention of acting well within their constitutional authority. *See Burns v. United States*, 501 U.S. 129, 138 (1991) ("declin[ing] to impute . . . an intention to Congress" to adopt a Rule of Criminal Procedure that would allow a district court "*sua sponte* [to] depart upward from an applicable Guidelines sentencing range without providing notice to the defendant").

*Third*, the path of least constitutional resistance remains open to us here. There is another way of reading one of the provisions before us—Rule 32(i)(1)(B)—that diminishes, if not eliminates, the due process issue. The provision, recall, says that a sentencing court must provide the parties with a "summary" of the confidential information and must give the parties "a reasonable opportunity to comment on that information." Fed. R. Crim P. 32(i)(1)(B). The requirement of a "summary," when read in conjunction with Criminal Rule 32(d)(3)(B)'s prohibition on disclosing confidential information, indicates that the summary may not disclose the source of the information or what comes to the same thing: revealing so many details as to make that source knowable.

The question is whether one can fairly say that a defendant has "a reasonable opportunity to comment on that information" when the court has summarized it so generally that a meaningful response is not possible. The right created by the rule is the right to comment on the *information* relied upon by the sentencing court, not the *summary* of that information. *See id.* ("[T]he court . . . must give to the defendant and . . . the government a written summary of—or summarize in camera—any *information* excluded from the presentence report . . . on which the court will rely in sentencing, and give them a reasonable opportunity to comment on *that information*.") (emphases added). The "reasonable opportunity to comment" proviso, in other words, may be read in one of two ways. It could be read to require the court to give the defendant reasonable notice of the confidential information through an accurate summary of it, a reasonable time to prepare a response and a reasonable opportunity at the sentencing hearing to put on as many witnesses as need be to respond to the information disclosed—which is how the district court read the rule. Or it could be read to say that a defendant never has a reasonable opportunity to respond when the summary—due to a promise of confidentiality and the nature of the charge—cannot offer the defendant sufficient information to form a meaningful response.

The two central policies underlying Rule 32 cut in opposite directions. The rule plainly seeks to maximize the amount of information available to district courts in exercising their sentencing discretion. *See* Fed. R. Crim. P. 32(d)(2) (requiring presentence report to include "the defendant's history and characteristics" and "the financial, social, psychological, and medical impact on any individual against whom the offense has been committed"); *see also* 18 U.S.C. § 3661. Read in light of this consideration, we could permit sentencing courts to rely on confidential information even when the summary makes a meaningful response unrealistic. At the same time, the procedural requirements of this provision and the rest of Rule 32 plainly advance due process concerns. *See United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000) ("This Circuit has consistently construed the requirements of Rule 32 in a strict manner, largely because the rule protects a defendant's right to due process."); *Hayes*, 171 F.3d at 392 ("Federal Rule of Criminal Procedure 32 protects the right to due process by requiring disclosure of most information relied upon at

sentencing.").  Read in light of this consideration, we could require a sentencing court under circumstances like these either (1) to obtain permission to disclose the information or (2) to refrain from using it in sentencing the individual.

Faced with two interpretations of the rule, each plausibly supported by the text and each plausibly supported by a policy underlying the rule, we adopt the construction that avoids the constitutional question.  In reaching this conclusion, we take a path not unlike the one the Supreme Court followed in *Burns v. United States*, 501 U.S. 129 (1991).  At issue in *Burns* was whether Criminal Rule 32 required a district court to give a criminal defendant notice before it *sua sponte* departed from the guidelines sentencing range.  At the time, Rule 32(c)(3)(A) required a court to give the parties 10 days' notice of the contents of the presentence report but did not contain a similar provision requiring the court to notify the parties that it was considering a *sua sponte* departure.  Based on this silence, the government argued that no notice was required.  In rejecting this interpretation, the Court observed that it (1) would "render[] meaningless the parties' express right 'to comment upon . . . matters relating to the appropriate sentence,'" *id.* at 136 (quoting Fed. R. Crim. P. 32(a)(1)), and (2) would be "inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences," *id.* at 137.  Of particular importance, for our purposes, the Court concluded that, "were we to read Rule 32 to dispense with notice, we would . . . have to confront the serious question whether notice in this setting is mandated by the Due Process Clause.  Because Rule 32 does not clearly state that a district court *sua sponte* may depart upward from an applicable Guidelines sentencing range without providing notice to the defendant we decline to impute such an intention to Congress."  *Id.* at 138.  For many of the same reasons the Court embraced in *Burns*, it seems appropriate to avoid a serious due process question here.

### B.

That leaves us with two additional tasks in resolving this appeal.  One, in light of this construction of Rule 32, did the district court's summary give Hamad sufficient information so that he had a "reasonable opportunity to comment" on the confidential documents?  The answer is no. The court's summary provided only a "general sense" of the charges made by the confidential witnesses, saying that Hamad (1) was "violent with his own wife and children," (2) "threaten[ed] harm to other persons," (3) "treat[ed] his wife as an inferior person" and (4) should be generally "considered a dangerous man."  JA 20.  These accusations both attacked Hamad's reputation—his reputation as a husband, father and member of the community—and suggested his future dangerousness. While Hamad retained the option of putting on witnesses saying he was a good man and a risk to no one, it did not give him the option, in defense counsel's words, to point out that his accuser "is a crack head who's had it in for [Hamad] since day one."  JA 55.  Because the summary did not refer to any specific incident or name its source(s), it did not give Hamad a "reasonable opportunity" to rebut the information or otherwise question its accuracy.  The district court's inability to provide Hamad with information regarding the "precise nature of any behavioral characteristics or instances of illegal conduct," *United States v. Woody*, 567 F.2d 1353, 1361–62 (5th Cir. 1978), not only handicapped his ability to contest those accusations, but also undercut Rule 32's purpose of promoting "focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences," *Burns*, 501 U.S. at 137.  *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("[T]he sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.").

It is true, as the government points out, that the district court gave Hamad ample time and opportunity to respond to this summary.  *See* Br. at 33 (The district court "alerted Hamad to the use of the sealed information fully two weeks prior to the sentencing hearing."); *id.* at 33–34 ("[D]uring the actual sentencing hearing, the court provided Hamad with a full opportunity to contest the substance of the information relied upon, as contained in the Mayor's letter and the summary

provided by the court."). But, in this case, no amount of notice and opportunity to respond would have permitted Hamad to respond to these allegations fairly when only we, and not Hamad, have seen them.

It is also true, as the government points out, that the district court offered to reveal the confidential documents to Hamad's counsel. Rule 32, however, directs sentencing courts to provide information to defendants, not just their counsel. *See* Fed. R. Crim. P. 32(i)(1)(B) ("[T]he court . . . must give to *the defendant* . . . a written summary of . . . any information excluded from the presentence report . . . .") (emphasis added). And as counsel pointed out in rejecting the offer, there are some accusations that can be met only with the assistance of the client, and most accusations can be met only by presenting evidence at the hearing that ultimately would risk disclosing to the client who the accuser was.

Two, was this erroneous application of Rule 32 here harmless? *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) ("[T]he fact that there was error in . . . sentencing does not necessarily mean that [defendant] is entitled to resentencing."). The answer again is no. The district court to its credit candidly acknowledged that it relied on the confidential documents in increasing Hamad's sentence. *See* JA 97 (district court expressing its intention to make "the record . . . very clear that [it had] taken into consideration materials that are under seal, and ha[d] relied upon them in the exercise of [its] discretion within the advisory guideline range"). This confidential information thus plainly "affect[ed] the district court's selection of the sentence imposed." *Hazelwood*, 391 F.3d at 801 (internal quotation marks omitted). To this day, moreover, Hamad has no way of knowing who his accuser is or how to respond to, much less impeach, the accusations. *Compare Hayes*, 171 F.3d at 394 (holding that "the letters in this case contain factual assertions and therefore are not the type of evidence that is 'essentially irrebuttable'" and that "[w]e will not insist that Hayes rebut evidence he has never seen in order to establish that he was prejudiced by the district court's reliance on that evidence"), *with United States v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005) (holding that district court committed harmless error by failing to provide victim impact letters, relied on at sentencing, to the defendant; "[t]here seems to be little that Meeker could have done to effectively rebut the heart-wrenching descriptions of his victims' emotional distress that were recounted in many of the letters," and Meeker failed to explain how he could have done so even though he was given access to the letters on appeal). By any measure, the error was not harmless.

\* \* \* \* \*

Under Rule 32, sentencing courts will not invariably be faced with the stark choice between obtaining permission to disclose confidential information or ignoring it. Testimony that primarily describes the impact of a specific instance of a defendant's behavior upon another's emotions, for example, frequently may be described particularly without revealing its source (so long as many people witnessed the conduct), and at any rate it is the kind of information that, in contrast to the information presented here, frequently will be "essentially irrebuttable." *Hayes*, 171 F.3d at 394 (internal quotation marks omitted). And testimony that a defendant committed a certain act at a certain time and place can often be described with particularity and exposed to meaningful adversarial testing without revealing its source (again so long as many people witnessed the conduct). A review of the sealed documents at issue in this case, however, convinces us of two things: (1) that the district court's summary did not give Hamad a meaningful opportunity to contest the allegations they contained and (2) that any summary that provided such an opportunity would almost certainly have revealed the documents' sources. Because Hamad did not, and could not, "reasonably comment on that information," Hamad's sentence violated Rule 32(i)(1)(B).

In assessing our resolution of this appeal, the reader no doubt wonders what these letters said. How else to know whether we have handled the case correctly? That curiosity, however, only

begins to approach what must have been Hamad's feeling about the matter—how can I argue for a shorter sentence when I cannot know why unidentified members of the community think I deserve a longer sentence? If nothing else, reading an opinion premised on letters that the court has seen but the public has not ought to give the reader a sense of what it was like to be in Hamad's shoes.

### III.

For these reasons, we vacate Hamad's sentence and remand the case to the district court to resentence Hamad without relying on the sealed documents. As for the suggestion of the *amicus curiae* that we require a different district judge (who has not seen the documents) to resentence Hamad, we entrust Judge Dowd with that decision.