**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0142n.06

Case No. 16-4748

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 16, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ERIC V. BARTOLI, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: KEITH, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Eric Bartoli appeals his 240-month sentence for several fraud-related convictions. We affirm.

I.

Twenty years ago, Eric Bartoli founded Cyprus Funds, Inc. Bartoli marketed Cyprus as a mutual fund—*i.e.*, a safe, conservative investment—but it turned out to be nothing more than a Ponzi scheme. By the time the Securities and Exchange Commission caught on, Bartoli and three co-conspirators had conned as many as 700 victims out of about $34 million.

Bartoli did not stick around for the fallout. Instead, he fled abroad to avoid arrest. He set up shop in Peru, where he launched *another* fraud scheme and defrauded investors of $5,588,000. All in all, Bartoli managed to evade detection abroad for over thirteen years. But

eventually, his luck ran out. Peruvian police caught him and shipped him back to the United States to face charges.

Upon his return, Bartoli pled guilty to various fraud-related offenses. His plea agreement adopted the 1998 United States Sentencing Guidelines, those "in use at the time of the completion of [his] offense," in computing his Guidelines range. R. 34, Pg. ID 157. This produced a recommended range of 97 months to 121 months. But Bartoli's pre-sentence investigation report found that his plea agreement overstated the losses he caused, so it recommended a lower range of 87 months to 108 months. The district court accepted the lower Guidelines range, but varied upward and imposed a sentence of 240 months.

II.

Bartoli first claims that the government breached the parties' plea agreement. Since Bartoli failed to make this claim below, he can obtain relief only upon a finding of plain error. Fed. R. Crim. P. 52(b). To clear this hurdle, Bartoli must show (1) error, (2) that the error is plain, (3) that the error "affect[s] substantial rights," and (4) that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alterations in original) (first quoting Fed. R. Crim. P. 52(b); then quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). Bartoli cannot make this showing.

In Bartoli's plea agreement, the government agreed to recommend a sentence within the Guidelines range and not "recommend or suggest in any way that a departure or variance is appropriate." R. 34, Pg. ID 156. But at sentencing, after the district court notified the parties that it was contemplating an upward variance, the government mentioned the Guidelines only in passing and sought a "significant sentence." R. 56, Pg. ID 433. Bartoli now says that the government failed to keep its word, and that this amounts to plain error.

Even assuming that the government breached the agreement, Bartoli must nevertheless demonstrate prejudice to satisfy the third step of the plain-error inquiry. *Puckett v. United States*, 556 U.S. 129, 140–41 (2009). To demonstrate prejudice, Bartoli must make a "specific showing" that his sentence would be shorter but for the government's breach, *Olano*, 507 U.S. at 735, or at least establish a "reasonable probability" of a more lenient sentence, *United States v. Marcus*, 560 U.S. 258, 262 (2010). Although Bartoli speculates that "the result might well have been different," he fails to explain how a lower sentence was reasonably probable, not simply possible. Reply Br. 8. After all, the district court twice acknowledged the parties' recommended sentence and disregarded it. At sentencing, three different victims asked (one "begg[ed]") the court to impose the statutory maximum (240 months). R. 56, Pg. ID 394, 400, 406. The court relied heavily on this testimony, stating that it had "rarely in all 18 years on the bench seen anyone who's created so much harm to so many people." *Id.* at Pg. ID 440. (The court later observed that it "ha[d] never before seen such massive devastation caused by a financial scheme to defraud." R. 45, Pg. ID 312.) Most tellingly, the court explained its 240-month sentence in part by noting that under the Guidelines in force at the time of sentencing, Bartoli's Guidelines range would have been significantly *higher* than 240 months. Accordingly, the court found that nothing less than the statutory maximum would be sufficient to comply with the sentencing statute. 18 U.S.C. § 3553(a). The record therefore indicates that Bartoli suffered no prejudice. *See United States v. Anderson*, 604 F.3d 997, 1003 (7th Cir. 2010) (finding no prejudice from a similar alleged breach where "the district court consciously imposed the maximum punishment permitted by law on an individual it viewed as recalcitrant"); *United States v. Almly*, 352 F. App'x 395, 397 (11th Cir. 2009) (per curiam) (finding no prejudice on similar facts where

defendant presented a "mere possibility" that he would have received a shorter sentence). Thus, Bartoli has no claim to relief under the plain-error standard.

III.

Bartoli next challenges the procedural and substantive reasonableness of his sentence. As one would expect, the government defends Bartoli's sentence. According to Bartoli, the very fact that the government is doing so violates his plea agreement. He again points out that the agreement bars the government from "suggest[ing] in any way that a departure or variance is appropriate," R. 34, Pg. ID 156, and argues that this broad language prohibits the government from defending his sentence on appeal. But the plea agreement makes clear that this language concerns only what "the parties agree to recommend [to] the Court"—the *district court*—about Bartoli's sentence. *Id.* The agreement says nothing about what the government can argue on appeal. Nor does the separate "Waiver of Appeal" section restrict the government's appellate rights. That provision imposes various restrictions on *Bartoli's* right to appeal, but not the government's. *Id.* at Pg. ID 159; *see United States v. Hammond*, 742 F.3d 880, 883 (9th Cir. 2014) (rejecting the notion that courts should imply waiver of government's right to appeal). And the agreement itself warns against reading in this restriction on the government's appellate rights, as it provides that "no other promises or inducements have been made" that are not expressly set out in its text. R. 34, Pg. ID 164.

Bartoli emphasizes that the government did not expressly reserve its right to defend an above-Guidelines sentence. But he identifies no authority requiring such reservation, and this court has not required it. *United States v. Mason*, 410 F. App'x 881, 890 (6th Cir. 2010); *see also Huff v. United States*, 734 F.3d 600, 610 (6th Cir. 2013) (holding that government did not breach plea agreement by defending district court's rejection of sentencing adjustment that the

government had agreed to). The government's defense on appeal, therefore, does not breach the parties' plea agreement.

A.

Bartoli next claims that the district court's sentencing procedure was flawed in three ways. He concedes, however, that he failed to raise his objections below, either during sentencing or in response to the court's *Bostic* inquiry. *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (requiring district courts, after stating sentence but before ending sentencing hearing, to ask the parties for any objections they have not yet raised). We therefore review Bartoli's procedural objections for plain error. *Id.* at 872–73.

*Victim Impact Statements.* First, Bartoli asserts that the district court erred by relying on victim impact statements that Bartoli's counsel did not receive until the night before sentencing. As Bartoli points out, relying on such statements without disclosing them to the defendant ahead of time is plain error. *United States v. Hayes*, 171 F.3d 389, 394 (6th Cir. 1999). But here, the statements *were* disclosed before sentencing. Although Bartoli laments the fact that the statements were not included in the pre-sentence investigation report (evidently because the probation office had not yet received them), he concedes that his counsel obtained copies the night before sentencing. Bartoli fails to identify any rule that this belated disclosure plainly violates.

The record confirms that no plain error occurred. On the morning of sentencing, the district court acknowledged the belated disclosure, notified counsel that it intended to rely on the statements, and offered "whatever time might be needed" for counsel to review the statements with Bartoli. R. 55, Pg. ID 384–86. Notwithstanding the court's admonition that the letters would "be an important consideration in deciding the sentence," *id.* at Pg. ID 385, counsel felt

that further review was unnecessary, stating that Bartoli was "ready to proceed" shortly thereafter, R. 56, Pg. ID 390. So counsel's conduct underscores the absence of plain error.

Bartoli further claims that he should have received the statements with victims' identities unredacted. But here again, Bartoli did not raise this issue below. If he had, the district court might have suggested various options, such as permitting review of victims' names *in camera* or requesting that the government seek victims' permission to disclose their names. But, absent a timely objection, no rule plainly requires disclosure of victims' identities. Bartoli tries to divine such a rule from *United States v. Hamad*, 495 F.3d 241 (6th Cir. 2007).

In *Hamad*, the district court shared a summary of confidential documents with the defendant that "did not refer to any specific incident or name its source(s)," and then relied on that summary at sentencing. *Id.* at 250–51. We held that sharing only this summary, and not the underlying documents, violated Federal Rule of Criminal Procedure 32. *Id.*; *see* Fed. R. Crim. P. 32(i)(1)(B). But here, unlike in *Hamad*, Bartoli received the victim impact statements (not just a summary) and had an opportunity to review the specific incidents they described. Not only that, but *Hamad* distinguished victim impact statements like those here, explaining that "[t]estimony that primarily describes the impact of a specific instance of a defendant's behavior upon another's emotions . . . frequently may be described particularly without revealing its source (so long as many people witnessed the conduct)." *Hamad*, 495 F.3d at 251; *see also United States v. Clark*, 335 F. App'x 181, 184 (3d Cir. 2009) (noting the absence of authority requiring that impact statements reveal a victim's identity). Bartoli nonetheless argues that knowing the victims' identities might have enabled him to explain his lack of personal involvement with them. But given the number of victims, the weight of their testimony, and Bartoli's role, there is "little that [Bartoli] could have done to effectively rebut the heart-wrenching descriptions of his

victims' emotional distress that were recounted in many of the letters." *United States v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005). Redacting victims' names from their statements was not plain error.

*Culpability Remark.* Next, Bartoli quarrels with the district court's remark that his co-conspirators had "roles and involvement [that] were significantly less" than Bartoli's. R. 56, Pg. ID 438. But this argument is dead on arrival. Bartoli was the "founder, fund manager, controlling director, and principal officer of Cyprus." R. 34, Pg. ID 167. Bartoli's co-conspirators, by contrast, were non-controlling "director[s]" with more limited responsibilities. *Id.* at Pg. ID 167–68. Additionally, Bartoli "held a leadership role over" his co-conspirators. R. 38, Pg. ID 225. Accordingly, the district court's remark was not plainly erroneous.

*Notice of Variance.* Bartoli's last procedural challenge is that the district court gave insufficient notice of its variance. But no rule requires such notice. *Irizarry v. United States*, 553 U.S. 708, 715–16 (2008) (holding that no notice is required for variances). While it is improper to vary upward based on undisclosed facts, Bartoli complains not of undisclosed facts, but that he could not have foreseen the district court's emphasis on *known* facts—victim impact—in varying upward. This lack of foresight on Bartoli's part is no basis for relief. *See United States v. Romero*, 704 F. App'x 445, 449 (6th Cir. 2017) (rejecting procedural challenge based on surprise at court's emphasis on a "garden variety consideration" in imposing upward variance (quoting *United States v. Coppenger*, 775 F.3d 799, 805 (6th Cir. 2015))). The district court's notice, therefore, was not plainly erroneous.

B.

Bartoli's final volley is that his sentence is substantively unreasonable. The gist of this challenge is that his sentence is too long in light of the factors enumerated in 18 U.S.C.

§ 3553(a). *See United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). In conducting substantive-reasonableness review, this court's job is not to subject Bartoli's sentence to "exacting and withering scrutiny," Reply Br. 17, even where, as here, a sentence is above the Guidelines. Rather, substantive-reasonableness review demands "due deference" to the district court. *Gall v. United States*, 552 U.S. 38, 51 (2007). It does not matter if we think a lower sentence is appropriate, so long as the district court reasonably concluded that the § 3553(a) factors "justify the extent of the variance." *Id.* Although large variances require more significant reasons than small ones, no "rigid mathematical formula" is in play. *Id.* at 47, 50. Substantive-reasonableness review embraces an abuse-of-discretion standard. *Id.* at 51.

To preserve a substantive-reasonableness challenge, a defendant need not respond to the district court's *Bostic* inquiry by saying, "My sentence is substantively unreasonable." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). But plain-error review still applies to "any arguments for leniency that the defendant does not present to the trial court." *Id.* at 392. Here, Bartoli made few of his arguments below. In this circuit, however, the government forfeits plain-error review by failing to ask for it, and the government has failed to ask for it here. *United States v. Williams*, 641 F.3d 758, 763–64 (6th Cir. 2011); *but see id.* at 770–73 (Thapar, J., concurring) (highlighting various problems with circuit's precedent of allowing government to unilaterally forfeit plain-error review). Abuse-of-discretion review therefore applies.

*Victim Impact.* Bartoli first asserts that victim impact alone cannot support the district court's variance. He does not dispute that his fraud inflicted devastating harm (both monetarily and emotionally) on an extraordinary number of victims, many of whom were elderly. Nor does he contest that this type of victim impact is appropriate grounds for a variance. *See* 18 U.S.C. § 3553(a)(1), (2)(A) (listing "the nature and circumstances of the offense" and the need "to

reflect the seriousness of the offense . . . and to provide just punishment" as pertinent considerations in sentencing); U.S. Sentencing Guidelines Manual § 2F1.1 cmt. 11(a), (c) (U.S. Sentencing Comm'n 1998) (explaining that an upward departure may be appropriate in a fraud case where the loss amount "does not fully capture the harmfulness and seriousness of the fraud," including where the fraud caused reasonably foreseeable "substantial non-monetary harm" and "psychological harm"); *see also United States v. Benskin*, 926 F.2d 562, 565–67 (6th Cir. 1991) (affirming upward departure where defendant's fraud inflicted psychological harm on over 600 victims, many of whom were elderly).

Rather, Bartoli maintains that the court gave victim impact too much weight. But a district court may place great weight on a single factor where the facts reasonably warrant such weight. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013). In addition, the district court relied on more than victim impact in varying upward. The court found it "equally" significant that Bartoli fled to avoid arrest, resided in Peru under various aliases, and perpetrated another, similar fraud while there. R. 56, Pg. ID 441. The district court thus reasonably found that a variance was necessary for "deterrence" and to "protect[] the public." *Id.*; *see* 18 U.S.C. § 3553(a)(2)(B)–(C). And while the loss amount in Bartoli's Guidelines range included the Peruvian fraud scheme, adding this amount did not increase Bartoli's Guidelines range. Thus, the district court reasonably found that range was insufficient to comply with the purposes of § 3553(a).

Still, Bartoli argues that the variance was just too large. He calls out the government for failing to identify a case involving a similarly sized variance. But this line of argument is misplaced. *E.g.*, *United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) (rejecting reliance on "singular case comparisons"). Although there must be some correlation between the size of a

variance and the reasons for it, *Gall*, 552 U.S. at 50, we give deference to the district court's calculation of that correlation, *id.* at 51. Here, even if a smaller variance would have been reasonable, Bartoli's offense conduct, its impact on victims, and his flight to and actions in Peru persuade us that the district court's variance was reasonable as well.

*Cooperation and Acceptance of Responsibility*. Bartoli next argues that the district court's sentence unreasonably ignores two factors: his cooperation with investigators and acceptance of responsibility. Beginning with cooperation, the district court denied the government's request for a departure based on information that Bartoli provided to law enforcement. Bartoli concedes that this denial "may have [been] within [the court's] discretion," Appellant Br. 51, and so it is difficult to understand why Bartoli believes that discounting the same cooperation under § 3553(a) amounts to an abuse of discretion. This is especially so given that Bartoli's counsel did not raise cooperation as a mitigating factor. *See United States v. Madden*, 515 F.3d 601, 611, 613 (6th Cir. 2008) (observing that a district court is not required to address mitigating factors "raised only in passing," and rejecting substantive-reasonableness challenge based on "weight to accord [to] mitigating factors"). As such, the district court did not abuse its discretion in declining to reward Bartoli's cooperation with law enforcement.

The same is true regarding Bartoli's acceptance of responsibility. Because he admitted to his conduct and pled guilty, Bartoli received an unopposed, three-level reduction in his Guidelines range. But in his allocution, Bartoli referred to his victims as "clients" and offered little in terms of an apology. R. 56, Pg. ID 427–30. The district court found his statements "a bit disingenuous" and "not quite frankly [a] heartfelt apology." *Id.* at Pg. ID 442. The district court therefore concluded that an upward variance was warranted notwithstanding Bartoli's acceptance

of responsibility, given the shallowness of his apology. This too was reasonable. *United States v. Folliet*, 574 F. App'x 651, 659 (6th Cir. 2014) (affirming similar sentencing decision).

*Age*. Bartoli, who was sixty-two when sentenced, also feels the district court gave his age short shrift in imposing a twenty-year sentence. But Bartoli made no mention of his age below beyond listing it in his sentencing memorandum without argument. Accordingly, the district court did not abuse its discretion in giving his age little weight. *Madden*, 515 F.3d at 611, 613. Moreover, Bartoli's age at sentencing was due in part to the thirteen years he spent on the run. Had he not fled, he would have been younger at sentencing, and his decision to flee and perpetrate an additional fraud scheme in Peru contributed to a longer sentence than he may have otherwise faced. So while age could be an important consideration under different circumstances, *e.g.*, *United States v. Payton*, 754 F.3d 375, 378–79 (6th Cir. 2014) (vacating forty-five year sentence where district court failed to address argument that defendant's age decreased his risk of re-engaging in violent crime), there is good reason to weigh other factors more heavily here. Thus, Bartoli's age is an insufficient basis to second-guess his sentence.

*Disparity*. Finally, Bartoli contends that his sentence will create an unwarranted sentence disparity. Section 3553(a)(6) instructs district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This provision focuses on "national sentencing disparities rather than sentencing disparities among codefendants." *United States v. Peppel*, 707 F.3d 627, 638 (6th Cir. 2013). Below, however, Bartoli made no argument about a national disparity. It is difficult to see how the district court abused its discretion in failing to consider a disparity argument that Bartoli did not present.

The argument Bartoli now advances is based on this court's decision in *United States v. Peppel*. *See id.* at 638–40. There, this court relied on a collection of fraud sentences compiled by a New York district court in concluding that a fraud sentence was unjustifiably disparate. *Id.* at 639–40 (citing *United States v. Parris*, 573 F. Supp. 2d 744, 751–53, 756–62 (E.D.N.Y. 2008)). Bartoli highlights that in that collection, "[non-cooperating defendants] whose losses were less than $100 million were generally sentenced to single-digit terms." *Id.* (quoting *Parris*, 573 F. Supp. 2d at 753). He stresses that, in addition to causing a loss amount lower than $100 million, he also cooperated with law enforcement. But by focusing solely on his cooperation (which the district court reasonably discounted) and loss amount, Bartoli ignores the other reasons for the variance: the number of victims, the harm that Bartoli's conduct caused, his flight, and his conduct in Peru. Thus, even if there is some disparity here, Bartoli fails to explain how it is unwarranted. Not only that, but as the district court noted, defendants in Bartoli's position would face a Guidelines range well above 240 months under the 2016 Guidelines, which were in force at the time of Bartoli's sentencing.[1] Bartoli's disparity argument is therefore unavailing.

\* \* \*

We **AFFIRM** Bartoli's sentence.

---

[1] Bartoli argues that the district court miscalculated the low end of his hypothetical 2016 Guidelines range as 360 months. But even with Bartoli's correction, the low end of his hypothetical range would be 292 months. U.S. Sentencing Guidelines Manual Ch. 5. Pt. A (U.S. Sentencing Comm'n 2016).