**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David Keith BELGARD,**
**Defendant–Appellant.**

No. 88–3173.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1989.

Decided Jan. 25, 1990.

Kenneth Lerner, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Charles H. Turner, U.S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT, TANG and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

David Keith Belgard appeals from a judgment in which he was sentenced to 42 months imprisonment with two years supervised release for his conviction for assault resulting in serious bodily injury to another, in violation of 18 U.S.C. § 113(f). Belgard's attack is two-pronged. First, he contends that the district court improperly instructed the jury with respect to the elements of simple assault and assault resulting in serious bodily injury. Second, he advances various constitutional challenges to the federal Sentencing Guidelines ("Guidelines") that were promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3625, 3673, 3742; 28 U.S.C. §§ 991–998. He asserts that the Guidelines scheme violates the doctrine of separation of powers, and that the function of probation officers violates that doctrine even if the scheme itself does not. He also asserts that probation investigating and reporting under the Guidelines and under a Temporary Order issued by the District Court for the District of Oregon on December 15, 1987, violate the due process clause of the fifth amendment. In addition, he claims that the Guidelines do not provide for enough opportunities for probation. We uphold the constitutionality of the Guidelines, and the propriety of the district court's order. We affirm the district court's instruction of the jury.

## BACKGROUND FACTS

David Belgard had an argument with Angeline Kalama, a woman with whom he lived on the Warm Springs Indian Reservation. The argument escalated into a fight. Kalama's part of the fight amounted to very little. It included some hairpulling. Belgard responded by throwing her to the floor. He then proceeded to rapidly and violently kick her in the stomach with his steel-toed work shoes. He did so with such force that he ruptured her small intestine. The doctor who performed emergency surgery upon her stated that the wound he observed would only have occurred if Belgard had used the amount of power that a football kicker would use in a field goal attempt. After inflicting the grievous injury upon her, Belgard agreed to help her seek medical aid, but only if she would not tell anyone that he was the one responsible for her injuries.

At the hospital, Belgard admitted that he had pushed her down and kicked her. He claimed that he had lost control of himself because she made him so angry. Belgard showed no evidence that he had been hurt at all.

He was subsequently indicted for assault resulting in serious bodily injury. 18 U.S.C. § 113(f). After a jury trial he was convicted of that crime.

On April 25, 1988, Belgard filed a motion to enjoin the use of the Guidelines. He alleged several constitutional challenges to the Guidelines. Chief Judge Panner, with the concurrence of the entire court, transferred to Judge Burns all of the cases involving constitutional challenges to the Guidelines. Oral argument was held on June 15, 1988. Judge Burns found the

constitutional challenges invalid in a well-reasoned opinion issued June 30, 1988. *United States v. Belgard*, 694 F.Supp. 1488 (D.Or.1988).

On July 5, 1988, Chief Judge Panner imposed on Belgard a sentence of 42 months imprisonment with two years supervised release and an order of restitution in the amount of $500.00, pursuant to 18 U.S.C. §§ 3551–3553. He also imposed a special assessment of $50.00 pursuant to 18 U.S.C. § 3013.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

█ We review de novo the question of whether a jury instruction correctly defines the elements of an offense. *United States v. Lopez*, 885 F.2d 1428, 1433 (9th Cir.1989); *United States v. Stenberg*, 803 F.2d 422, 433 (9th Cir.1986). However, a district court's formulation of the instructions is reviewed for an abuse of discretion. *United States v. Linn*, 880 F.2d 209, 217 (9th Cir.1989).

█ A district court's determination that a statute is constitutional is a determination of a question of law, and we review questions of law de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

### A. The Claim of Instructional Error

█ Belgard contends that the district court's instruction eliminated the mental element of the crime of assault with serious bodily injury from the jury's consideration. He suggests that if he had not in-tended to inflict injury upon the victim he could not be guilty of this offense, even if he intended to do the injurious acts.[1]

Belgard claims that he had to have had at least a general intent to perpetrate an injury upon another and that the district court took that issue away from the jury by not properly instructing it on the intent element. *See United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir.1976) (per curiam). We find that the instructions were sufficient.

The trial court informed the jury that Belgard could only be found guilty if he "unlawfully and willfully" kicked the victim. The court then went on to explain that the kicking was unlawful if it was contrary to law, and that it was done willfully "if done voluntarily and intentionally, and with a specific intent to do something that the law forbids." The instructions were adequate. While they may have been imperfect, giving them did not constitute an abuse of discretion. *United States v. Linn*, 880 F.2d at 217. They were well-suited to the case itself, for while there could be no doubt that Belgard had administered a series of powerful kicks to his victim, which one could easily infer were intended to inflict injury, the jury was still free to find Belgard not guilty had it decided that what he did was not unlawful or that he had no specific intent to do anything the law forbade. He was entitled to no more than that.[2]

█ Of course, there was ample evidence to show that he did, indeed, intend to inflict an injury upon the victim. The overwhelming weight of that evidence demonstrates that any ambiguity that remained in the instructions could not have prejudiced Belgard. Any error in the instructions was simply harmless error given the facts of this case. *See Carella v. California*, —— U.S. ——, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam); *Rose v.*

---

**1.** This sounds a great deal like a claim that specific intent is required in an assault with serious bodily injury case. However, Belgard eschews that claim and we need not discuss it further, although it is clear that a claim of that nature would fail in any event. *See United*

States v. Johnson, 637 F.2d 1224 (9th Cir.1980); *United States v. Knife*, 592 F.2d 472 (8th Cir. 1979).

**2.** The same analysis shows that the simple assault instruction was also sufficient.

*Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Lopez,* 885 F.2d at 1439; *Dickey v. Lewis,* 859 F.2d 1365 (9th Cir.1988).

### B. The Constitutionality of the Sentencing Guidelines

#### 1. *Separation of Powers*

■ In his brief filed before the Supreme Court ruling in *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), Belgard claimed that Congress had violated the separation of powers doctrine and had made an unlawful delegation of legislative power when it created the Sentencing Commission and placed it within the judicial branch. *United States v. Mistretta* has disposed of those issues, adversely to defendant.

#### 2. *The Role of the Probation Officer*

Belgard contends that under the Sentencing Reform Act the probation officer acts as an arm of the executive branch. He claims that violates the separation of powers principle. Specifically, he complains that under the Act the probation officer investigates the offense instead of the offender. He also contends that the probation officer's investigative role violates due process in that the probation officer predetermines factual questions in presentence reports, the defendant does not have a meaningful opportunity to be heard with respect to those reports, and district judges will be compromised by the probation officer's reports in their final sentencing determinations.

■ Although the Supreme Court was not faced with a challenge to the role of probation officers in *Mistretta,* it nonetheless indicated that there is nothing unconstitutional about nonadjudicatory activities being undertaken by auxiliary bodies that are placed within the judicial branch. *Mistretta,* 488 U.S. at ——, 109 S.Ct. at 666 n. 20. Of course, it then upheld the place-

ment of the Commission in the judicial branch.[3]

The judiciary's power to appoint an independent investigator to gather information for sentencing is entirely consistent with the Court's prior holdings. That is made clear by the Court's decision in *Williams v. New York,* 337 U.S. 241, 249–50, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949), where the Court approvingly spoke of the probation officers' investigatory function in the following terms:

Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information.... To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life.... The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues.

While we have no indication that the Court was asked to pass upon the separation of powers issue, this statement could hardly

---

**3.** The Court has also approved of the appointment of a private attorney by and on behalf of the judicial branch to prosecute criminal contempt cases, *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), and has upheld the power of the judiciary to appoint a special prosecutor. *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).

be a more clear repudiation of the notion that probation officers cannot properly function within the judicial branch of government. Not only can they, but they are virtually indispensable. We, too, have recognized the important function of probation officers. As we noted in *United States v. Gonzales*, 765 F.2d 1393, 1398 (9th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986), "when the [probation] officer is preparing a presentence report he is acting as an arm of the court."

While the details of the duties and role of a probation officer have changed under the Guidelines, the probation officer's essential function remains the same today as it was before November 1, 1987. The probation officer's duty is to compile information which then takes the form of a neutral written recommendation to the judge. His purpose is still to provide the trial judge with as much information as possible in order to enable the judge to make an informed decision. His report, however, is no more binding on the judge than the pre-Guideline reports were.

Belgard's reliance on *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (judge accompanied police on investigation), and *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (judge sat on grand jury and later presided over case), is misguided. In those cases, the judge was acting as both the investigator and the ultimate decision-maker. The probation officer is not the decision-maker.

Belgard also contends that the probation officer's function is tied to rehabilitation. He argues that since rehabilitation is no longer a goal in sentencing, there is no

longer a need for a probation officer.[4] However, the presentence report is not tied to the rehabilitative model; there is no inextricable link between the two notions. A court needs as much detailed information if it seeks to impose a uniform sentence as it needs if it seeks to rehabilitate directly. The idea that the punishment should fit the crime does not preclude its also fitting the criminal. Moreover, fit is much more difficult to achieve in an information vacuum.

In other words, although the Supreme Court was specifically addressing a different sentencing model when it decided *Williams*, virtually everything it said then remains true under the Guideline system, and there is no reason to believe its opinion would change.[5]

The *Williams* Court noted that investigational techniques had an important role if punishments were to be individualized. While in some ways the Guidelines *have* restricted individualizing,[6] they have by no means excluded it. A review of the Guidelines themselves demonstrates that. They are replete with considerations and elements designed to focus upon the specific offender, including the precise nature of his acts and his background. Examples of this can be found in Part 2B of the Guidelines where adjustments to the offense level are made for such things as the amount involved, the planning involved and the danger involved, in the various adjustments in Chapter 3 of the Guidelines, and even in the criminal history part of the Guidelines which contains its own set of adjustments and exclusions. *See* U.S.S.G. Chapter 4.

Beyond that there is a clear recognition in the Act creating the Guidelines and in the Guidelines themselves that further individualization can be appropriate. Judges

---

4. We note however that sentencing under the Guidelines includes a list of considerations similar to those mentioned in *Williams*. *Compare* 18 U.S.C. § 3553(a)(2) *with Williams*, 337 U.S. at 248–49 n. 13, 69 S.Ct. at 1084 n. 13. In particular, 18 U.S.C. § 3553(a)(2)(D) specifically refers to "treatment" of the defendant "in the most effective manner." Of course, even discipline (or punishment) can perform a character-changing rehabilitative function. See Westheimer, *Understanding Retribution*, Crim.Just. Ethics, Summer–Fall 1983, at 19.

5. For ease in reading, we will focus upon the previously quoted language from *Williams* without continual specific references to the exact location of the language itself within that quotation.

6. For example, the Guidelines do not generally allow individualizing for factors Congress found inappropriate such as vocational skills and family ties. 28 U.S.C. § 994(e).

will have an opportunity to provide for just that when they are able to articulate the factors that truly make a particular case different. 18 U.S.C. § 3553(b), U.S.S.G. § 5K2.0. There is, however, an attempt to regularize that individualization so that similarly situated individuals will not be treated differently in different places or by different judges.

All of this requires investigation. That is what probation officers have always done; that is what they must do now. For example, probation officers have always had the job of investigating the prior criminal record of the defendant, including both charged and uncharged offenses. *See e.g.,* Appendices B and C to the opinion in *Belgard,* 694 F.Supp. at 1502–11.

The Supreme Court, in *Williams,* noted that probation officers were trained to aid offenders, not to prosecute them. There is no reason to believe that the Guidelines have changed that. While probation officers will now have to total up points based upon the facts they develop, that is far from prosecution. Points may be added or subtracted. Moreover, nothing will preclude the probation officers from giving departure recommendations (up or down) to district judges for their consideration. Nor do the Guidelines preclude probation officers from delving as deeply into all aspects of the defendant's background as they did before, or from doing so with as much concern as before.

The *Williams* Court noted that judges wanted to sentence people on the best information available, and, thus, highly valued the probation officer's reports. Surely that remains the same. In fact, given the attempt to achieve uniformity by use of a point system, the need for accurate information at the time of sentencing is even greater.

The Supreme Court noted that the penological procedures then in force had been adopted after careful consideration and widespread experimentation. That is also true of the Guidelines system. Even the period between the enactment of the enabling legislation in 1984 and the final implementation in November of 1987, was not short. Moreover, a great deal of debate and analysis preceded that. *See, e.g.,* the background discussion in Appendix D of *Belgard,* 694 F.Supp. at 1511–12.

Finally, the *Williams* Court noted that the function of the probation officer was necessary if judges were to obtain accurate sentencing information without endless delay. Now, as much as and perhaps more than ever the probation officer is needed if we are to avoid the endless delay that the Supreme Court foresaw.

In sum, the judicial need for probation officers which the Supreme Court outlined in *Williams* has not changed. Nor has the basic function of those officers. The Guidelines system itself is not an alien one. It is an autochthon. The fact that probation officers are integral to the proper operation of the new system, as they were under the old system, does not require that they be removed from the judicial branch of the government.

Belgard finally mounts a due process attack which, at its base, rests on the assumption that probation officers are performing judicial decision-making functions which result in a deprivation of the right to be heard.

■ To the extent that Belgard's attack is based upon the investigation and recommendation functions that probation officers perform, it was answered in *Williams,* 337 U.S. at 250–51, 69 S.Ct. at 1085 where the Court said:

> The considerations we have set out admonish us against treating the due-process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence.... The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.

To the extent that Belgard's attack is based on the idea that probation officers' recommendations will preclude the district court from finding facts on any issue which is disputed, he is wrong. The district court is unquestionably required to resolve any and all disputes. *See* U.S.S.G. Chapter 6 and Fed.R.Crim.P. 32. In fact, as the commentary to Guidelines § 6A1.3 points out, it is likely that the new Guideline procedures will actually require more formality than did sentencing under pre-Guidelines law. As the Commission has noted:

In current [pre-Guideline] practice, factors relevant to sentencing are often determined in an informal fashion.... This situation will no longer exist under sentencing guidelines. The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair.... When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.

U.S.S.G. § 6A1.3 commentary. In that sense, defendants may have actually acquired more due process than they had before.

To the extent that Belgard's attack is based on the claim that the trial judge will be biased by the probation officer's pre-sentence report and will be unable to sit as a neutral factfinder and render an impartial decision, Belgard is even further off the mark. The trial judge has always been permitted to consider "the circumstances of the offense together with the character and propensities of the offender." *Williams,* 337 U.S. at 248 n. 10, 69 S.Ct. at 1083 n. 10 (quoting *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58

S.Ct. 59, 61, 82 L.Ed. 43 (1937)). As the court in *Farrow v. United States,* 580 F.2d 1339, 1350 (9th Cir.1978), explained, "[w]e must trust our judges will rise above [impermissible] influences—just as we are confident they do in the cases of racial or personal bias, or public or private pressure." This court relies on the integrity of district court judges in sentencing matters. We are certain that district judges have the ability to read a pre-sentence report without being improperly influenced.[7] Our excellent trial bench has always been able to live up to these standards. The judges have read and considered probation reports, have taken evidence, have listened to arguments of counsel, have heard from the defendants and have then gone on to exercise their own independent judgments. The Guidelines have not changed that.

Belgard points to nothing in the procedure outlined in the Oregon Temporary Order regarding Sentencing Guidelines that would affect this analysis, or make the Order invalid if the Guidelines sentencing scheme itself is valid. We, therefore, reject the attack on the Order as well.

In fine, the functions of the probation officer neither violate the separation of powers, nor deprive defendants of due process.

### 3. *The Guidelines' Restriction on Probation*

Belgard asserts that the Guidelines, as adopted, have unduly restricted the courts when probation is to be considered. He asserts that since 18 U.S.C. § 3561 provides that defendants may be sentenced to a term of probation unless they have committed Class A or Class B felonies, it follows that the Guidelines may not further restrict the grant of probation. We disagree.

In enacting the enabling legislation, Congress quite clearly intended to give the Sentencing Commission wide latitude when it adopted the Guidelines. It did not balk

---

**7.** We have even held that ex parte communications of the probation officer with the court are

proper. *Gonzales,* 765 F.2d at 1398–99.

when it came to consider the area of probation. Rather, Congress expressly told the Commission that it was to "promulgate and distribute to all courts of the United States ..." a set of Guidelines regarding sentences which would include: "a determination whether to impose a sentence to probation, a fine, or a term of imprisonment." 28 U.S.C. § 994(a)(1)(A). Congress did not, it will be seen, further restrict the Commission in that regard, with the exception that it did tell the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense...." 28 U.S.C. § 994(j). The Sentencing Commission has followed that mandate, and has explained its approach in Chapter 1, Part A of the Guidelines at paragraph 4(d). *See also* U.S.S.G. § 5B1.1.

 Belgard also attacks the formulation of the Sentencing Guidelines in the area of probation because they curtail the authority of the district judges to individualize sentences. That attack cannot succeed.

 First, the Constitution does not require individualized sentences in non-capital cases. *United States v. White*, 869 F.2d 822, 825 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). *See also Mistretta*, 488 U.S. at —, 109 S.Ct. at 650 ("the scope of judicial discretion with respect to a sentence is subject to congressional control"); *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) ("the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes"). Congress has the power to enact mandatory and determinate sentencing laws and to completely divest the courts of their sentencing discretion, and has exercised this power. *Lockett*, 438 U.S. at 603–05, 98

S.Ct. at 2965. *See also United States v. Grayson*, 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978) (early practice was for Congress to prescribe specific sentence).

Second, under the Guidelines system the trial judge still has discretion to depart if there are factors in a particular case which were "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b). As the Eighth Circuit pointed out in *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir. 1989):

> Under the Guidelines, sentencing judges retain discretion to accept or reject a plea bargain, to resolve factual disputes about the appropriate base offense level, to consider adjusting that base level for mitigating and aggravating circumstances, to choose from a range of sentences, to set probation conditions, and to determine when to depart from the Guidelines.

Third, "[i]f Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the guidelines." *White*, 869 F.2d at 825.

 Fourth, defendants have no constitutional right to probation. *White*, 869 F.2d at 827. The right to probation is analogous to the right to parole. We have already approved the imposition of mandatory minimum sentences without parole in *United States v. Klein*, 860 F.2d 1489 (9th Cir.1988). In that case, we explained that parole is not a substantive right, but "simply an act of executive grace." *Id.* at 1497.

Congress gave the Commission wide latitude in setting Guidelines for granting or denying probation in all but certain felony cases. *White*, 869 F.2d at 827. Moreover, Guideline § 5B1.1, albeit more limiting than 18 U.S.C. § 3561(a), does not prohibit probation entirely.[8] It merely circumscribes the availability of probation. We

---

**8.** Under U.S.S.G. § 5B1.1 probation is allowed where not prohibited by statute, if: (1) the minimum term of imprisonment in the range specified by the sentencing table is zero months, or

(2) is at least one but not more than six months and the court imposes a condition or combination of conditions requiring intermittent confinement or community confinement.

see no due process problem with this restriction of probation.

Therefore, we hold that the Guidelines' restriction of probation does not violate due process.

## C. The Special Assessment

Because we have held that the special assessment is an unconstitutional taxing device, we find that Belgard is not required to pay the $50.00 assessment. *See United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988), *cert. granted,* —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989).

## CONCLUSION

We hold that the district court's instructions on simple assault and assault resulting in serious bodily injury were sufficient.

We find that the Sentencing Guidelines easily withstand the separation of powers and due process attacks which Belgard makes upon them.

We vacate the assessment. In all other respects the decision of the district court is AFFIRMED.