*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0459p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

<em>Plaintiff-Appellee,</em>

*v.*

No. 06-3266

RICHARD CHRISTMAN,

<em>Defendant-Appellant.</em>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00127—Susan J. Dlott, District Judge.

Argued: March 9, 2007

Decided and Filed: November 20, 2007

Before: BOGGS, Chief Judge; BATCHELDER and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** C. Ransom Hudson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** C. Ransom Hudson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

GRIFFIN, J., delivered the opinion of the court, in which BATCHELDER, J., joined. BOGGS, J. (p. 13), delivered a separate dissenting opinion.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Defendant-appellant Richard Christman pleaded guilty to two counts of a superseding indictment, charging him with the possession of materials constituting child pornography in violation of 18 U.S.C. §§ 2252, 2252A, and 2256. The district court sentenced defendant to 57 months of imprisonment, 3 years of supervised release, a $1,000 fine, and a $200 special assessment. Defendant now timely appeals, claiming that in determining his sentence, the district court improperly relied upon extraneous information obtained from *ex parte* communications with a probation officer and a pretrial services officer that contradicted record evidence and information contained in the presentence investigation report.

For the reasons set forth below, we hold that defendant's sentence was imposed in violation of Federal Rule of Criminal Procedure 32 ("Rule 32"), which requires that at sentencing, the court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence," and further states that the court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing. . . ." FED. R. CRIM. P. 32(i)(1)(C), (i)(3)(B) (2002). Here, the district court's admitted reliance upon the *ex parte* communications, consisting of the probation and pretrial services officers' subjective impressions that defendant had acted on his pedophilia and in fact had molested children, not only deprived defendant of his right to be sentenced on the basis of accurate and reliable information, U.S.S.G. § 6A1.3, but also foreclosed any opportunity for defendant to comment on and respond to the information, contrary to Rule 32(i).

Because the district court acknowledged three months after the sentencing hearing that were it not for the information not disclosed to defendant, it would have imposed a lower sentence, the error was prejudicial. We therefore vacate defendant's sentence and remand for resentencing.

I.

On May 13, 2004, an undercover special agent of the Federal Bureau of Investigation in Little Rock, Arkansas, used an internet-connected computer to initiate a "Kazaa" search, a software program that allows peer-to-peer digital file sharing between internet users. The agent initiated the search using keywords associated with child sexual abuse imagery. As a result, the agent was able to download, from another computer identified by a specific internet protocol ("IP") address, child sexual abuse images that showed minors engaging in various sex acts. The images and still pictures included some that involved sadistic and masochistic acts, as well as other acts of sexual violence between minors and children under the age of 12. The agent also downloaded movies from this other computer, including some showing adult males engaging in various sex acts with children.

The agent was able to determine that the IP address, from which the images and movies were downloaded, belonged to defendant Christman. Other FBI agents, operating independently in Oklahoma, also downloaded child pornography from Christman's computer using Kazaa-enabled searches. After independent investigation by the Cincinnati FBI Field Office confirmed the information that had been forwarded to them from the Little Rock and Oklahoma City FBI offices, agents sought and received a search warrant for defendant's residence.

The warrant was executed on August 5, 2004. FBI agents recovered computer-printed child sexual abuse images, as well as computers and computer media. The seized items contained more than 600 images of child pornography. Agents concluded that defendant was involved in file sharing of child pornography on an international scale; defendant had obtained images from all over the world, including Brazil and England, and had transported these images via computer files to other individuals all over the world. The investigation indicated that defendant did not sell or advertise child pornography, but possessed and transported or shared images internationally strictly for his personal use.

On October 20, 2004, a grand jury for the Southern District of Ohio returned a two-count indictment against defendant, charging him with distribution of child pornography. A six-count superseding indictment filed on November 17, 2004, charged defendant with four counts of transporting child pornography using his computer and two counts of possession of child pornography. A forfeiture allegation was also included in the superseding indictment pursuant to 18 U.S.C. § 2253.

On January 7, 2005, defendant pleaded guilty, pursuant to a plea agreement, to Counts Five and Six, possession of materials constituting child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), 18 U.S.C. §§ 2252A(a)(4)(B) and (b)(2), and 18 U.S.C. § 2256(8)(A).

A final presentence investigation report ("PSR") was prepared and transmitted to the district court on May 3, 2005. The PSR identified the base level offense as 15 and added four enhancements – 2 points because the material involved a minor under 12 years of age; 2 points because a computer was involved; 4 points because the offense involved material portraying sadistic or masochistic acts; and 5 points because more than 600 images were involved. Three points were subtracted for acceptance of responsibility, resulting in a total offense level of 25. In evaluating defendant's acceptance of responsibility, the PSR noted that defendant "acknowledged possessing child pornography, but stated he does not stalk children and would never harm them." Another portion of the PSR reiterated that defendant "told agents that he was not addicted to child pornography and was different from individuals who molested children." The resultant total offense level of 25, combined with defendant's criminal history category I, indicated an advisory Guidelines sentencing range of 57-71 months.

At the sentencing hearing held on October 28, 2005, defendant and his counsel advanced several arguments in support of mitigation of sentence, including defendant's chronic back pain and depression and the fact that he acted as caretaker for his elderly ill mother. Counsel for defendant pointed out that defendant had no criminal history and that there was no evidence that contact with children had ever occurred or been contemplated by defendant. In this latter regard, defense counsel submitted to the court a Psychological Assessment Report prepared by psychologist Stuart W. Bassman, Ed.D., who, at defense counsel's behest, interviewed defendant to assess his psychological status. In his report, Dr. Bassman noted defendant's contention that "his attraction is at purely a fantasy level and that he would never harm children by acting out sexually against them." Dr. Bassman opined that:

> The patient is seen as having pedophilia. Pedophilia involves a sexual attraction to prepubescent children that may or may not have been acted upon and which attraction or fantasies are distressing to the individual. The patient contends that he has never acted on his attraction and fantasies. Nevertheless, because these fantasies are present and cause him distress, he meets the criteria for a diagnosis of pedophilia.

The district court declined to deviate downward from the recommended Guidelines sentencing range and sentenced defendant to serve concurrent terms of 57 months of incarceration, ordered defendant to pay a $1,000 fine and $200 special assessment, and further imposed three years of supervised release. The district court identified the information upon which it relied in imposing sentence:

> The Court has received the presentence report prepared April 27th, 2005. The Court has also received and reviewed the following documents relevant to sentencing: One, the psychological assessment report by Dr. Stuart Bassman; two, the defendant's sentencing memorandum filed October 20th, 2005; and, three, a letter from defense counsel dated October 20th, 2005 enclosing letters from Richard Christman, Mary Christman, Leonard Christman, Jarold Christman, Ron Christman, and Eric Blair.

The court allowed defendant to remain out of prison on bond until January of 2006, at which time he was ordered to voluntarily surrender to authorities.

On January 25, 2006, the district court convened an in-chambers status conference with counsel to discuss the following matter before issuance of the judgment and commitment order:

> What I want to make a record of and bring to your attention is that, in addition to what's in the presentence report and included with that I think is the psychiatric report and everything that was submitted by the parties, *I had discussions that counsel was not privy to between myself, a probation officer and a pretrial services officer. And that influenced my decision.*
>
> *And what they told me was contra to some of the facts in the presentence report. They indicated to me that they believed that Mr. Christman had acted on the pedophilia, had in fact molested children. That was – and I accepted what they said.*
>
> In hindsight, I realize that that's totally inappropriate, and I should have not accepted what they said. And therefore I based my sentence on information that doesn't – that is opposite of what it states in the presentence report, that is totally counter to the presentence report.

(Emphasis added.) The district judge elaborated:

> But I feel awful about this. It was my fault, my fault only, that I listened to hearsay, that there was no – there is no basis in fact for that. *They had – that was just feelings that these two people had. It wasn't based on anything they had observed or seen or done or conversations they had with him. And, in fact, the psychiatric report says to the contrary, and so does the presentence report.*
>
> So I think it's very significant that, you know, when I considered – when I decided that he had acted on his pedophilia, I decided to go with the Guidelines. *Had I not taken that into consideration, I would have given him a much lower sentence.*

(Emphasis added.)

The following colloquy then occurred between the Assistant United States Attorney ("AUSA"), who was not present at the original sentencing, and the district court:

> AUSA: And I didn't know if – were these issues brought up at that time [of the original sentencing]? It was something that was determined after the fact?
>
> THE COURT: Before the fact. What happened was I had been contacted, I think, by both Probation and Pretrial about this case. And I coincidentally had a meeting with both of them at the same time. And it was during that meeting that these officers expressed opinions to me that were contrary to what was in the presentence report. And instead of giving the parties an opportunity to address that – or what I should have done was not considered that, because it wasn't part of the presentence report and it was counter to what counsel thought I was using as a basis for my sentencing. I mean, counsel thought I was sentencing on the basis that he had never acted on his pedophilia, when, in fact, I was influenced by hearsay to the contrary.

> \* \* \*

> I apologize for this. My only explanation was I sentenced 28 people in that week, and I was just trying to get ready for a long surgery and a long period out of the office. And I didn't give this the time and thought that I should have.

After questioning her authority to change the sentence previously imposed,[1] the district judge thereafter entered the judgment of conviction, which reflected the sentence that was announced on October 25, 2005. This timely appeal followed.

Defendant now argues, and we agree, that the district court's reliance upon the undisclosed *ex parte* information of dubious accuracy at sentencing violates Rule 32(i) and constitutes error that, under these particular circumstances, requires vacation of his sentence and remand for resentencing.

## II.

"A sentencing hearing . . . is not a criminal trial, and many of the constitutional requirements of a criminal trial do not apply at sentencing." *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007). Thus, it is well established that neither the rules of evidence nor the right to confront witnesses applies at sentencing. *Id.*; *United States v. Brika*, 487 F.3d 450, 457 (6th Cir. 2007). "Congress prefers the inclusion rather than the exclusion of information at sentencing, *see* 18 U.S.C. § 3661 ('No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'). . . ." *Hamad,* 495 F.3d at 246.

However, Federal Rule of Criminal Procedure 32, which governs sentencing and judgment, "contemplates full adversary testing of the issues relevant to a Guidelines sentence. . . ." *Burns v. United States*, 501 U.S. 129, 135 (1991). In essence, Rule 32 "protects the right to due process by requiring disclosure of most information relied upon at sentencing." *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999). As it pertains to the present case, Rule 32 fulfills this function by mandating that at sentencing, the district court "must allow the parties' attorneys to comment on the probation officer's determination and on other matters relating to the appropriate sentence." FED. R. CRIM. P. 32(i)(1)(C). Subsection (i)(3)(B), also pertinent to this appeal, instructs that the court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]"

In conjunction with Rule 32, U.S.S.G. § 6A1.3, Resolution of Disputed Factors, provides as follows:

> (a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

> (b) The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.

"U.S.S.G. § 6A1.3(a) does establish a minimum indicia-of-reliability standard that evidence must meet in order to be admissible in Guidelines sentencing proceedings." *United States v.*

---

[1] *See generally,* FED. R. CRIM. P. 35 and 36; *United States v. Strozier*, 940 F.2d 985, 987 (6th Cir. 1991) ("[O]nce the sentence has become a final non-appealable order, the district court may no longer amend or modify a sentence without violating defendant's due process rights. Further, the power of a district court to amend a sentence only extends to a situation where the district judge has misapplied the Sentencing Guidelines, not to situations where he simply changes his mind about the sentence.") (citation omitted).

*Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007).  Thus, pursuant to § 6A1.3, "the district court is obligated to rely on *reliable* evidence at sentencing."  *Brika*, 487 F.3d at 457.

We have interpreted U.S.S.G. § 6A1.3 and Rule 32 to allow a district court to consider hearsay evidence in sentencing so long as such evidence has sufficient or minimally adequate indicia of reliability and the defendant has an opportunity to rebut such evidence that he perceives is erroneous.  *See Moncivais*, 492 F.3d at 657-59 (proffer statement of coconspirator contained sufficient indicia of reliability to be admissible at sentencing); *Brika*, 487 F.3d at 457-58 (confessions of other persons involved in offense, corroborated by other evidence, deemed sufficiently reliable to permit their consideration as hearsay evidence at sentencing in determining whether enhancement for being leader or organizer was appropriate); *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007) (citing U.S.S.G. § 6A1.3 and holding that hearsay statements of coconspirators that the defendant was a cocaine supplier were supported by sufficient indicia of reliability to be considered at sentencing); *United States v. Silverman*, 976 F.2d 1502, 1512-13 (6th Cir. 1992) (en banc) (statements from coconspirator and confidential informant held sufficiently reliable for sentencing purposes).

We have, in several cases, addressed the procedural notice requirements of Rule 32 and the concomitant opportunity to respond that must be afforded to a defendant when a sentencing court relies upon undisclosed evidence.  In *United States v. Patrick*, 988 F.2d 641 (6th Cir. 1993), the defendant alleged that the sentencing judge improperly relied on information obtained from a codefendant's plea hearing in adopting the probation department's recommendation that an offense level be adjusted upward to reflect the defendant's role as a leader or organizer in the charged offense of marijuana trafficking.  The defendant argued that he was not given an adequate opportunity to challenge this evidence, mentioned by the court for the first time at the sentencing hearing.  The defendant further maintained that had the codefendant's testimony not been considered, the evidence of record would have been insufficient to support a finding that he was a "leader" as defined in the Guidelines.

We concluded that any error on the part of the district court was harmless because, first, "other evidence already before the sentencing judge and a part of the presentence record fully supported the judge's ultimate finding that Patrick's role was that of a leader," and

> [s]econd, and more importantly, advance notice of the potential for reliance upon the evidence to which Patrick objects would not have provided Patrick with any additional incentive or ability to challenge the accuracy of the evidence.  To the extent that the sentencing judge relied on Carmack's testimony that he worked for Patrick, this evidence was cumulative, because Patrick himself admitted the existence of the employment relationship during earlier testimony.
>
> * * *
>
> Patrick was aware that his role in the offense would be at issue, and was presumably prepared to challenge the probation department's recommendation at the sentencing hearing.  Under such circumstances, Patrick already had an adequate incentive to present any evidence or arguments he could that would contradict the inference that he was a leader.  *Where the evidence upon which the sentencing court relies without previously notifying the defendant is of the same character, allows the same inferences, and, most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware, it seems logical to conclude that advance notice would not give the defendant any additional incentive or ability to challenge the evidence.*  Accordingly, we hold that, because advance notice would not have given Patrick any increased incentive or ability to introduce

evidence or make arguments in rebuttal, the sentencing court's failure to provide advance notice of its intention to rely on matters outside the record constitutes harmless error.

*Patrick*, 988 F.2d at 648-49 (emphasis added) (citations omitted).

We noted that our decision in *Patrick* "stands in some tension" with *United States v. Berzon*, 941 F.2d 8 (1st Cir. 1991), but found *Berzon* to be "sufficiently dissimilar to merit different treatment":

> In *Berzon*, the defendant learned as the sentencing court announced its ruling that the court was possibly relying on evidence that was neither contained in the record nor even similar to any that was. The First Circuit ruled that, under such circumstances, the case had to be remanded to the sentencing court for a determination of whether the court had relied on extraneous information. Here, although Patrick was not notified in advance of the sentencing hearing of the potential for reliance upon extraneous information, he was at least so informed at the hearing, and he was given an opportunity to address the evidence prior to the ruling on the issue. Furthermore, there is no indication that the extraneous evidence relied upon in *Berzon* was of the same character as other evidence already contained in the record, an important consideration in this case. Accordingly, we decline to follow *Berzon*, and we affirm the sentencing court's decision to overrule Patrick's objection to the presentence report's recommendation that two points be added to the offense level to reflect Patrick's role in the offense.

988 F.2d at 649.[2]

Subsequently, in *United States v. Hayes*, we held that the district court's express reliance upon previously undisclosed victim impact letters in imposing the maximum sentence permitted under the Guidelines for defendant's bank robbery and firearm convictions constituted plain error that affected the defendant's substantial rights.[3] *Hayes*, 171 F.3d at 395. Characterizing the district court's reliance on the undisclosed evidence as "far more apparent . . . than it was in *Patrick*," *id.* at 392, we concluded:

---

[2]In *Berzon*, the defendant contended that the district court improperly resolved the disputed sentencing issue of his role as a leader or organizer in a narcotics ring and made an upward adjustment of his base level offense in reliance upon a drug enforcement agent's prior testimony at a codefendant's sentencing hearing, without notifying the defendant that such testimony regarding his role in the offenses had been given or was being considered for sentencing purposes. The defendant alleged that the sentencing court thus violated Rule 32 and U.S.S.G. § 6A1.3, as well as his constitutional rights. The *Berzon* court concluded that "notwithstanding the wide scope of the sentencing court's discretion, a defendant may not be placed in a position where, because of his ignorance of the information being used against him, he is effectively denied an opportunity to comment on or otherwise challenge material information considered by the district court." *Berzon*, 941 F.2d at 21. The *Berzon* court emphasized that "a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based," *id.* at 10, but added, "we do not suggest that the district court was not entitled to hear the testimony at [the codefendant's] sentencing, and, thereafter, consider it when sentencing Berzon. All the sentencing court need to have done, in such event, was to timely advise Berzon in advance of sentencing that it heard or read, and was taking into account, that testimony, thus enabling him to respond to it before the sentence was set." *Id.* at 21. Because it was unclear from the record whether the district court in fact had relied on the undisclosed information, the *Berzon* court did not order resentencing, but rather remanded to the sentencing judge with directions that he indicate in the record whether he materially relied on the information in sentencing the defendant. *Id.* at 10. Resentencing by a different judge was called for only if the court indicated affirmatively that it relied on the undisclosed information.

[3]Because the defendant failed to object at the sentencing hearing to the district court's use of the letters in determining his sentence, we analyzed his appeal pursuant to Federal Rule of Criminal Procedure 52(b), which allows the review of plain errors despite the appellant's failure to object. *Hayes*, 171 F.3d at 391.

Rule 32 requires that except in certain limited circumstances, *see, e.g.*, Rule 32(b)(5), the defendant must have the opportunity to review information that will be used for sentencing. Though Rule 32(b)(6) only expressly deals with the right to review the presentence investigation report, the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by Rule 32 and in the requirement of [former] Rule 32(c)(1) [now subsection (i)(1)(C)] that both counsel for the defendant and the government must be provided "an opportunity to comment on the probation officer's determination and on other matters related to the appropriate sentence." Even when it is necessary to exclude information from the presentence report for reasons of confidentiality, the sentencing court must summarize in writing any information upon which it relies, and the defendant must have "a reasonable opportunity to comment on that information." FED. R. CRIM. P. 32(c)(3)(A) [as amended, now Rule 32(i)(1)(B) (2002)].

\* \* \*

[W]e presume that criminal defendants are generally entitled to notice of the evidence against them. We do not agree that information furnished directly to the court that is utilized at sentencing is not required to be disclosed under Rule 32 merely because it was "not made part of the presentence report." [*United States v. Curran*, 926 F.2d 59, 61 (1st Cir. 1991)]. Holding that the requirements of Rule 32 apply only to what the court designates as the "presentence report" would be contrary to *Burns*, which held that Rule 32 applies to the district court's mere intention to depart from the Guidelines. Evidence used at sentencing may not be kept from the defendant simply by failing to incorporate it into the presentence report.

*Id.* at 392-93.

We noted that in contrast to the circumstances in *Patrick*, where the extraneous evidence was largely cumulative, "essentially irrebuttable," and the defendant knew in advance that the issue of his role in the offense was a possible ground for enhancing his sentence, the defendant in *Hayes* had no notice that the victim impact letters would be a factor at his sentencing hearing. *Id*. at 394-95. Thus, because the "use of undisclosed evidence against a criminal defendant, without the safeguards of Rule [32], is the type of error that may undermine the fairness of a proceeding and that certainly tarnishes the public reputation of judicial proceedings," we vacated the defendant's sentence and remanded for resentencing within the already-determined Guidelines range. *Id*. at 395.

In *United States v. Meeker*, 411 F.3d 736 (6th Cir. 2005), we addressed the issue of a district court's reliance upon undisclosed victim impact letters in imposing an upward departure from the recommended sentencing Guidelines range for the defendant's fraud convictions. At the sentencing hearing, the district court for the first time mentioned the letters in explaining why it had concluded that the crime was "a special or unusual case" that warranted an upward departure. *Id*. at 740. At no point during the hearing, however, did defense counsel object to the district court's consideration of the undisclosed letters.

On appeal, the defendant argued that the district court committed plain error in relying on the undisclosed victim letters, in violation of Rule 32(i)(1)(C). Citing our previous decision in *Hayes*, we held that the district court's failure to provide these letters to the defendant prior to the sentencing hearing violated the requirements of Rule 32 and thus constituted plain error. *Meeker*, 411 F.3d at 741. However, we concluded further that the defendant's substantial rights were not affected by this error because he failed to demonstrate prejudice. Not only was there additional evidence of record to forewarn the defendant that the sentencing court would consider the impact

of his crime, i.e., the PSR contained a five-page list of the victims' names and the enormous sums of money lost as a result of the defendant's massive mail fraud scheme, *id*. at 743, but moreover,

> [t]here seems to be little that Meeker could have done to effectively rebut the heart-wrenching descriptions of his victims' emotional distress that were recounted in many of the letters. Because this evidence was "essentially irrebuttable," *Hayes*, 171 F.3d at 394, even if it had been disclosed to him in advance of his sentencing hearing, Meeker can show no prejudice warranting correction under Rule 52(b).

*Id*. at 742.[4]

Most recently, in *Hamad*, we addressed the question of "[w]hat happens when a district court, applying the advisory sentencing guidelines, not only increases a sentence based on its own fact findings but also does so on the basis of evidence never fully disclosed to the criminal defendant?" *Hamad*, 495 F.3d at 241. The defendant, who pleaded guilty to the offenses of being a felon in possession of a firearm and failure to register a shotgun with a barrel shorter than 18 inches, alleged on appeal that the district court violated Rule 32(i)(1)(B), which provides that a sentencing court must give the parties a written summary of, or summarize in camera, any confidential information excluded from the presentence report on which the court will rely in sentencing "and give them a reasonable opportunity to comment on that information." FED. R. CRIM. P. 32(i)(1)(B). At the sentencing hearing, the district court candidly acknowledged that it relied on confidential documents alleging that the defendant was a dangerous person in increasing his sentence within the recommended Guidelines range.

Although the district court provided the defendant with a written summary of the confidential information, we concluded that the summary did not disclose sufficient information to allow the defendant a meaningful opportunity to contest the allegations and that any summary that provided such an opportunity would have revealed the documents' sources. Consequently, "[b]ecause Hamad did not, and could not, 'reasonably comment on that information,' Hamad's sentence violated Rule 32(i)(1)(B)." *Hamad*, 495 F.3d at 251. We therefore vacated the defendant's sentence and remanded the case to the district court for resentencing without reliance on the sealed documents. In doing so, we noted the tension between the two central policies underlying Rule 32 – on the one hand, to maximize the amount of information available to a sentencing court and, on the other hand, to protect a defendant's right to due process – and, "adopt[ing] the construction that avoids the constitutional question," *id*. at 249, we concluded that "[b]ecause the escalation of a sentence based on undisclosed evidence raises serious due process concerns, we construe [Rule 32] to require a sentencing court either to disclose sufficient details about the evidence to give the defendant a reasonable opportunity to respond or, failing that, to refrain from relying on the evidence." *Id*. at 241.

In the instant case, the Government argues that, although the district court should have disclosed its *ex parte* conversation with the probation and pretrial services officers to the parties before sentencing, its failure to do so is not error warranting resentencing. The Government maintains that the present circumstances differ from *Hayes* in several important respects. Chief among these differences is the fact that the communication in this case was not between the court and third-party victims or witnesses, but rather occurred between the court and its own officers. The Government argues accurately that "it is not improper for the court to hold presentence conferences with the probation staff," *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983), because "[d]uring these nonadversarial communications, the court confers with its own agent in the absence

---

[4]We ultimately vacated the defendant's sentence and remanded for resentencing in light of the district court's error in relying upon judge-found facts to impose sentence enhancements, contrary to *United States v. Booker*, 543 U.S. 220 (2005). *Meeker*, 411 F.3d at 746.

of the defendant or any representative of the prosecution." *United States v. Johnson*, 935 F.2d 47, 50 (4th Cir. 1991). Indeed, "Federal Rule of Criminal Procedure 32 recognizes several circumstances under which a probation officer may communicate *ex parte* with the sentencing court through the presentence report without disclosure of the substance of these communications. . . . For example, a probation officer's final sentence recommendation, diagnostic opinions, and confidential or sensitive information need not be disclosed." *Id.* at 51. *See* FED. R. CRIM. P. 32(d)(3) (requiring exclusion from the presentence report of confidential, diagnostic or other information that might result in harm to the defendant or others if disclosed); FED. R. CRIM. P. 32(e)(3) ("By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence.").

In *Johnson*, the court approved *ex parte* presentence conferences between the district court and probation officers, rejecting the defendant's challenge that such contact violated the defendant's constitutional rights to counsel and confrontation. The *Johnson* court noted that "[t]hroughout the process of interviewing a defendant, preparing a presentence report, and discussing the report during a presentence conference with the court, a probation officer continues to be a neutral, information-gathering agent of the court, not an agent of the prosecution." *Johnson*, 935 F.2d at 49-50. The *Johnson* court recognized, however, that the parameters of a court's acceptable *ex parte* communications with a probation officer are tempered by the constraints of the Guidelines sentencing scheme and the requirements of Rule 32:

> Guidelines sentencing has formalized the sentencing process by requiring the sentencing judge to make specific findings of fact and articulate reasons for a particular sentence in open court. *See* U.S.S.G. § 6A1.3, comment (Nov. 1990); *see also United States v. Belgard*, 894 F.2d 1092, 1099 (9th Cir. 1990) (result of guidelines sentencing is that "defendants may have actually acquired more due process than they had before."). While courts are entitled to consider without limitation any "information concerning the background, character, and conduct of a person convicted of an offense," 18 U.S.C. § 3661 (West 1985), sentencing guidelines mandate that a sentence be based upon objective factors supported by reliable evidence. U.S.S.G. § 6A1.3, comment. These factors include, among others, aspects of a defendant's underlying offense conduct, role in the offense, criminal history, and acceptance of responsibility. *See generally* U.S.S.G. § 1B1.1. In conjunction with Federal Rule of Criminal Procedure 32(c)(3)(D), the guidelines further require that if a defendant alleges any factual inaccuracy in the presentence report, the court shall make factual findings regarding the disputed issue or determine that no factual finding is necessary because the contested information will not affect the sentence. *See* U.S.S.G. § 6A1.3, p.s.; *see also United States v. Walker*, 901 F.2d 21 (4th Cir. 1990). In comparison to the former sentencing regime, guidelines sentencing significantly diminishes the conceivable impact of ex parte communications from a probation officer to a sentencing court.

\* \* \*

> The function of a probation officer is to provide the sentencing judge with as much information as possible to enable the court to make a just and informed sentencing decision. We will not presume that a probation officer will act improperly. Further, we rely upon the integrity of district court judges and trust their ability to disregard any attempt to impermissibly influence a sentencing decision. *Belgard*, 894 F.2d at 1099. The resolution of disputed sentencing issues, and indeed, the determination of an appropriate sentence in all respects, remains the exclusive province of the trial judge who exercises independent and impartial judgment in arriving at final sentence determinations.

*Id.* at 50-51.[5]

Here, in sentencing defendant, the district court, by its own admission, relied upon the subjective impressions of the court officers that defendant had acted on his pedophilia and in fact had molested children. According to the judge, this information was no more than "just feelings that these two people had. It wasn't based on anything they had observed or seen or done or conversations they had with [defendant]." The district court did not reveal its reliance upon this information until almost three months after sentencing. The Government suggests that the *ex parte* communication was harmless: "Terming the subject of this conference 'undisclosed information' is actually somewhat inapt, since the court officers merely supplied their own subjective feelings, which, as the district court recognized, were not based on any additional, undisclosed observations of or conversations with Christman or anyone else. As such, the conference did not include any information that was contrary to any fact or recommendation in the Presentence Report." However, it is precisely this type of unsubstantiated insinuation – of questionable accuracy and reliability – that the strictures of Rule 32 and U.S.S.G. § 6A1.3 are designed to screen in the sentencing process.

Moreover, unlike the undisclosed evidence in *Patrick*, the subjective impressions of the court officers cannot be characterized as evidence that is cumulative, "essentially irrebuttable," or of the same character as other evidence already contained in the record. *Hayes*, 171 F.3d at 394. Instead, the officers' "feelings" contradicted directly not only defendant's statements to investigating officers and the probation officer, as recorded in the PSR, that "he does not stalk children and would never harm them" and that he was "different from individuals who molested children," but also his insistence to Dr. Bassman that "his attraction is at purely a fantasy level and that he would never harm children by acting out sexually against them," and Dr. Bassman's resultant diagnosis that although defendant met the criteria of a pedophile, his sexual attraction to children was confined to the realm of fantasy. Most significantly, there is no evidence in the record that pedophiliac contact between defendant and children ever had occurred.

The circumstances in this case are unique. Because the district court did not disclose to the parties until almost three months after sentencing at a status conference that it had relied upon the vague impressions of the court officers in rendering the sentence, it was impossible for defendant to respond meaningfully to the extraneous information and to "comment on the probation officer's determinations and other matters relating to an appropriate sentence," a clear violation of Rule 32(i)(C).[6] As we emphasized in *Hayes*, "[e]vidence used at sentencing may not be kept from the defendant simply by failing to incorporate it into the presentence report." *Hayes*, 171 F.3d at 393. As a consequence of the district court's error, defendant's entitlement to a ruling on what unquestionably would have been a "controverted matter" at sentencing was wrongly denied. FED. R. CRIM. P. 32(i)(3)(B). This error is compounded by the district court's failure to evaluate the extraneous information, in accordance with U.S.S.G. § 6A1.3(a), to ascertain whether it "has sufficient indicia of reliability to support its probable accuracy." To the contrary, the district court's own description of the *ex parte* communications clearly shows that the probation and pretrial services officers' "gut feelings" had no basis in the record and therefore should not have been considered.

---

[5] *See also United States v. Espalin*, 350 F.3d 488, 495-96 (6th Cir. 2003) (Lawson, D.J., concurring) (observing that when a probation officer mischaracterizes relevant facts or excludes or ignores competing arguments, "even then, the adversary system contains safeguards that protect the defendant's interest in bringing forth facts that give an accurate picture to the sentencing judge.") (citing Rule 32(f)(1) and (i)(1)(C)).

[6] Federal Rule of Criminal Procedure 51(b) provides in pertinent part that "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."

The effect of the district court's error on defendant's sentence is clear. The Government asserts that there is no indication that defendant's sentence would have been different had the extraneous information been disclosed prior to sentencing, particularly in light of the fact that at the sentencing hearing, defendant presented, and the court heard, argument regarding defendant's proclivity, or lack thereof, toward harming children, and imposed a reasonable sentence at the bottom of the recommended Guidelines range.

However, the district court declared on the record that "[h]ad I not taken that into consideration, I would have given him a much lower sentence." We cannot ignore this statement. "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless – i.e., any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). In light of the district court's unequivocal declaration that the error affected defendant's sentence, the error cannot be considered harmless and a remand for resentencing is therefore required. *Id.*

As we have noted, at the sentencing hearing defendant presented the district court with numerous reasons why a downward variance in his sentence was arguably warranted pursuant to *United States v. Booker*, 543 U.S. 220 (2005). It is within the district court's purview to reconsider these arguments upon remand.

### III.

In remanding this matter, we note that "in the last analysis the trial judge is the filter between the recommendation of the probation officer and the sentence actually imposed." *Espalin,* 350 F.3d at 490. We are "rel[iant] upon the integrity of district court judges and trust their ability to disregard any attempt to impermissibly influence a sentencing decision." *Johnson*, 935 F.2d at 51. Here, the district judge suffered a lapse of judgment in this regard. Although the judge acknowledged belatedly her mistake and brought it to the attention of the parties, the situation left no recourse but the present appeal to this court, which could have been avoided had the familiar requirements of Rule 32 and U.S.S.G. § 6A1.3 been observed.

For the foregoing reasons, we vacate defendant's sentence and remand for resentencing without reliance upon the information obtained *ex parte* from the probation and pretrial officers.

---

**DISSENT**

---

BOGGS, Chief Judge, dissenting. This case presents a disturbing set of circumstances and a genuine conundrum as to the proper legal resolution. The district judge, several months after sentencing and well after any time for possible correction of the sentence under Rule 35 had passed, indicated on the record that she felt she had made an error in judgment in her sentencing, by sentencing within the guideline range rather than granting a substantial downward variance. Such a feeling is certainly not a unique circumstance among all of the thousands of sentences that occur in federal courts each year.

The judge further indicated that this error occurred, at least in part, as a result of conversations she had with a probation officer and pretrial services officer, who conveyed their "feelings," not "anything they had observed or seen or done or conversations they had with [defendant]." Under these circumstances, although I appreciate the judge's feelings of remorse, I cannot agree that the judge committed legal error, or should be permitted to alter her sentence at a time when such an alteration would otherwise be barred. I therefore respectfully dissent.

A judge is not barred from discussing a presentence report with probation or pretrial court employees, any more than with a judge's own law clerks. While it would generally be improper for a judge to rely on actual fact-related statements from either source, such as a claim that the clerk or employee had witnessed certain conduct by defendant, a discussion of the import of the record is no more than an extension of the judge's own thought processes. Had the judge concluded in her own mind that defendant likely had acted on his sexual fantasies, I don't think anyone would maintain that the judge could come back months later and simply change her mind.

I do not see that the judge's assessment of a plea for leniency in the form of a downward variance is a "controverted matter" under Rule 32(i)(3)(B). It does not constitute a ruling of fact or law that affects the offense level or criminal history category. I see no authority that a judge must rule separately, as a "controverted matter" on all claims (individually or collectively) that might be made by either side in a general plea for a greater or lesser sentence. The imposition of a sentence that properly considers the factors under 18 U.S.C. § 3553(a) adequately rules on whether a variant sentence is justified.

Because "sentencer's remorse" is a significant possibility with district judges, especially in light of the very severe limitations on alterations under the current Rule 35(b)[1], I am quite hesitant to open the potential loophole that is created by this opinion. While the circumstances of this particular case might be unique, the principle established opens the way for remorseful district judges to alter sentences long after the permitted time. It also opens an avenue for attack on sentences by claims, well-founded or not, that a judge had (or "must have had") communications with members of the court family (clerks and pretrial and probation officers) that led to a judge's exercising poor judgment in sentencing.

While I recognize that this case presents quite unusual facts (at least in the judge's recantation, whether or not in the judge's discussions), I am reluctant to embrace the principle embodied in the majority opinion, and I therefore respectfully dissent.

---

[1] Prior to 1987 and the amendment of Rule 35(b) by Pub. L. 98-473, § 215, 98 Stat. 1837, 2016 (1984), a judge could reduce a sentence within 120 days of imposition.