NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0569n.06

No. 13-4149

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 28, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

EILEEN FERN FOLLIET,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:     CLAY and STRANCH, Circuit Judges; and BLACK, District Judge.

CLAY, Circuit Judge. Defendant Eileen Fern Folliet challenges the district court's imposition of a 36-month sentence after Defendant pleaded guilty to four counts of mail fraud in violation of 18 U.S.C § 1342. Defendant argues that she was not provided sufficient notice under Fed. R. Crim. P. 32(h) of the district court's intention to depart from the guidelines, and contends that her sentence was procedurally and substantively unreasonable. For the reasons set forth below, we **AFFIRM.**

BACKGROUND

Between December 2005 and January 2011, while working as an investment adviser for Doris E. Lackman, a nonagenarian widow, Defendant misappropriated funds from Lackman's personal account as well as the Elwin and Doris Lackman Foundation, a charitable trust for

which Defendant served as co-trustee. Defendant pleaded guilty to four counts of mail fraud pursuant to a written plea agreement.

The plea agreement did not contain any promises about the sentencing range to be used or sentence to be imposed,[1] but the parties stipulated to the computation of the advisory sentencing guidelines offense level. The parties agreed that under U.S.S.G. § 2B1.1, which applies to embezzlement and other forms of theft, the base offense level for Defendant's crime is seven. § 2B1.1(a)(1). The parties also agreed that an enhancement under § 2B1.1(b)(1) would be appropriate. Section 2B1.1(b)(1) prescribes graduated sentencing enhancements, which apply where the loss exceeds $5,000. Where the net loss is more than $70,000, but less than $120,000, the offense level is increased by eight. § 2B1.1(b)(1)(E). Where the loss is more than $120,000, but less than $200,000, the offense level is increased by ten. § 2B1.1(b)(1)(F). The government calculated the net loss amount as $117,063.05. They arrived at this number by subtracting the amount to which Defendant supposedly would have been entitled as compensation for her services as trustee—$35,000—from the amount that Defendant had unlawfully taken from the victim's personal bank account ($111,013.05) and from the charitable trust ($41,050). Defendant disputed the government's calculations, and argued that the loss amount should in fact be lower than $117,000. (13-1, PSR, at 18.) Although the government and Defendant could not agree on the precise amount of loss, each calculated the net loss as somewhere between $70,000 and $120,000, and so they stipulated that an eight-level enhancement pursuant to § 2B1.1(b)(1)(E) would be appropriate.

---

[1] To the contrary, the plea agreement provided: "Defendant understands that the [sentencing] recommendations of the parties will not be binding upon the Court, that the Court alone will decide the advisory guideline range under the sentencing guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guideline range, and what sentence to impose." (R. 26, at 61.)

The parties also agreed that a two-level increase pursuant to § 3B1.3 was appropriate, since Defendant abused her position of trust. For purposes of the plea agreement, the government agreed to recommend a three-level reduction for acceptance of responsibility, resulting in an offense level of 14, and a guideline range of 15–21 months. This calculation was reflected in the Presentence Report ("PSR"), which was prepared by an officer from the U.S. Pretrial Services and Probation Department. Defendant filed three objections to the PSR, two of which disputed the amount of loss. Defendant also disagreed with the government on the appropriate amount of restitution.

A sentencing hearing was held on September 18, 2013. In addition to Defendant and Defendant's counsel, three other parties participated in the hearing: counsel for the government, the representative for the estate,[2] and counsel for the estate. Prior to the sentencing hearing, at the district court's request, the estate provided documentation, such as cancelled checks and deed records, to support its calculations of the amounts of loss and restitution.

At the sentencing hearing, the district judge questioned each of the interested parties in order to resolve the "dispute . . . regarding the amount of restitution" and amount of loss. (R. 26, Sentencing Transcript, at 2, Page ID 129.) The district judge first questioned the government attorney on the stipulated loss calculation. The judge expressed skepticism about the $35,000 offset for Defendant's "services rendered" as trustee in light of the fact that Defendant had been stealing from the trust:

> **The Court:** Let me ask a question here, and you can advise me perhaps or point me to some authority or some law, or some other basis. Under what theory may a trustee steal from the trust and/or the beneficiaries of that trust, and still be entitled to fees for serving as a trustee? Under what theory do you arrive at that type of

---

[2] After the victim, Doris Lackman, passed away, her estate became the victim in the criminal case against Defendant. The executor of the estate—Doris Lackman's cousin, James Spuhler—represented the estate's interests. The estate was also represented by counsel, Attorney Higgins.

negotiation in your conclusion? Because quite frankly, that strikes me as just beyond the pale that an individual could act as the trustee, steal from the trust, and then come back and say, oh, by the way, I'm entitled to fees for services rendered. Can you enlighten me in some fashion?

**Government**: It's hard to, Your Honor, to be honest. . . .

**The Court:** So we're going to pay her for fees as a trustee during this same period of time when she's stealing from the trust and stealing from the beneficiaries? She's entitled to be paid?

**Government**: I don't disagree with you.

**The Court**: Well, you negotiated the plea agreement. You're the one who gave her the benefit.

**Government**: To be frank, Your Honor, we came into a situation where two months into our investigation our victim passed away. Based upon that, did I want to do that? No. But at some point, looking at whether or not I could fully prosecute the case, and making that determination based upon the fact that now my victim who would say I didn't give her consent is gone, I felt at that particular time, based upon the government's position, that – that's why I did the plea this way, Your Honor.

**The Court**: I don't mean to be harsh with you, but again, Mr. Higgins [counsel for the victim's representative] back here, who we will hear from in a moment, who did, quite frankly, an extraordinary job in piecing together and reconstructing all that happened here, and we have not only this theft for many years, but we also have what I would characterize as perhaps some other relevant conduct here by this defendant, i.e., such things as her son showing up as the beneficiary on this annuity, and some other things that occurred here that would make one believe this is, again, this is a far, far more serious type case than someone – I've seen many cases where trustees, trustees and/or executors, or others, tipped into the till, so to speak, but this is, quite frankly, an extraordinary course of conduct that gives me pause . . . .

(*Id.* at 10.) The district court then heard from the estate, which argued that the loss calculation and restitution amount in the PSR were too low and did not accurately reflect the total amount of loss. The estate cited Ohio Revised Code § 5810.01 in support of the argument that the $35,000

offset was inappropriate under the circumstances of this case. That statute provides: "To remedy a breach of trust that has occurred . . . the court may . . . [r]educe or deny compensation to the trustee." Ohio Rev. Code § 5810.01(B)(8). The court recognized that this statute was "not certainly controlling," but explained that it was "certainly instructive." (R. 26, at 56.)

The estate then alerted the court as to a mistake in the government's loss calculations. The estate provided documentation and accounting to support its assertion that $33,302.11 that the investigating officers originally believed was already accounted for was actually omitted from the loss calculation. When asked to respond to the estate's statement regarding the $33,302.11, the government replied: "We made a mistake. Those should be included. I just talked to the agent. . . . [T]hose should have been counted[.]" (R. 26, at 24.)

Finally, the court heard from Defendant's counsel, who focused her argument primarily on the appropriate restitution calculation. As to the issue of loss amount, Defendant's counsel stated only:

> [W]e stipulated to the loss amount in the plea agreement. And although [Defendant] instructed me to object to the very thorough PS[R] prepared by the government, she understands that there's some ambiguity there about how much money was in the account and what her fees were entitled to, and some offsets. Perhaps the Court doesn't believe there is any appropriate offset.

(R. 26, at 27.)

After hearing from each of the parties, the court recounted the issues and made determinations about which figures to include in the restitution and loss amounts. Regarding the offset, the court explained, "clearly a trustee who steals from the beneficiaries should not be entitled to any fees whatsoever, at least in my view, under these set of facts." (R. 26, at 56.) The court found that the $33,302.11 that the government mistakenly omitted from its calculation should also be included.

Having resolved the issues surrounding amount of loss and restitution, the Court proceeded to calculate the applicable advisory guideline range, explaining that it was "the court's duty . . . to properly calculate the advisory guidelines." (R. 26, at 56.)   The district judge explained:

> The PS[R] recommends a loss amount that was more than $70,000 but less than $120,000. . . .
>
> [T]he parties have previously calculated the loss amount at $117,063.05. That loss amount, however, incorporated two things.  It . . . contemplated . . . a $35,000 compensation to the defendant for managing the trust from 2006 to 2010, and I have obviously concluded that that will not be a credit against the amount of loss.  Additionally, there is a $33,000 sum of money that the government candidly acknowledges was mistakenly omitted from the amount of loss. So the net of 117,000 would be increased by a total sum of $68,000, and according to my quick math, therefore the amount of loss would be 185,000, approximately $185,000. And under the loss table it would calculate more than $120,000 would be the amount of loss, and the increase in the offense level would be 10, not the 8 that is contemplated in the plea agreement.
>
> And that is how -- if either side wishes to be heard regarding that calculation you may, but I will apply a 10-level specific offense characteristic. Again, so it is clear for the record, I have denied the defendant any benefit of the $35,000 compensation as trustee fees for reasons I've already stated. And additionally, as the government has noted and the victim has testified, or the victim has presented, there clearly is an additional $33,000 amount of loss through the Alianz account, as it's called, that would also increase the amount of loss.
>
> Either of those amounts would obviously increase the amount of loss above the "more than 70,000" to "more than 120,000," and . . . does not take us to "more than 200,000" by my calculation. So therefore . . . an offense level 10 will be. . . the specific offense characteristic.

(R. 26, at 57–59.)

As contemplated by the parties, the court applied a two-level increase for abuse of a position of trust under § 3B1.3, and granted a three-level reduction for acceptance of responsibility.  With a base offense level of seven, an enhancement of ten, an enhancement of

two, and a reduction of three, the resulting offense level was 16, and the corresponding advisory guideline range was 21 to 27 months.

After praising the district court's analysis, the government nevertheless filed an objection "for the record" out of respect to the parties' plea agreement. (R. 26, at 60.) Defendant also objected, imploring the court to respect the plea agreement, for which the parties "negotiated hard and long." (*Id.*)

After the district court reaffirmed its calculation of 21 to 27 months, Defendant's counsel requested a downward departure. Defendant made a statement, apologizing for her "mistakes," and explaining that she is an honest person who did dishonest things. Defendant's statement ultimately proved unpersuasive and counterproductive. The district judge found Defendant's statement to be unapologetic and offensive to the extent that it minimized Defendant's conduct——which the judge described as "absolutely reprehensible." (R. 26, at 80–81.)

The district judge then went through Defendant's history and characteristics, and well as the nature of the crime. He recited the § 3553(a) factors (several times, in fact), and went through each factor at length. Citing specific language from her statement to the court as examples of Defendant's "complete lack of understanding" of the wrongfulness of her conduct, the judge found that Defendant was "not willing to accept the wrongfulness . . . or fully acknowledge the criminal nature" of her conduct. (R. 26, at 78.)

The district judge recounted the details of several specific fraudulent transactions to highlight the reprehensible "nature of [Defendant's] conduct," and to give Defendant and "a reviewing court an understanding of why it is that . . . a lengthy term of incarceration is appropriate." (*Id.*) The judge found it problematic that the thefts occurred—and escalated— over the course of six or more years, and that Defendant exploited the trust of a woman who

"certainly, certainly relied" upon her. (*Id.* at 81.) The judge also considered the fact that Defendant apparently made no effort to come up with money to pay restitution. (*Id*. at 70.) After a lengthy discussion of the factors, the court explained:

> 21 to 27 months is inadequate, in my view, to reflect the serious nature of this conduct and this criminal pattern over many, many years, and I will again vary above the guideline range for the reasons I've just stated.

(R. 26, at 81.) The district court ultimately imposed an above-guidelines sentence of 36 months of imprisonment on each count, to be served concurrently. In a written statement of reasons, the district judge indicated that the reasons for imposing a sentence outside the advisory guideline system were: "the nature and circumstances of the offense and the history and the characteristics of the defendant"; "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." The district judge wrote: "The guideline range is inadequate to reflect the seriousness of the defendant's behavior. The upward variance is based on the fact that the defendant has not accepted full responsibility for her wrongdoings and also will send a message to the public that this type of crime will not be tolerated." (R. 13-2, PSR, at 29.)

Defendant timely appealed, challenging the procedural and substantive reasonableness of the sentence imposed by the district court, as well as the lack of notice regarding the court's intention to apply the ten-level enhancement under § 2B1.1(b)(1)(F) instead of the eight-point enhancement under § 2B1.1(b)(1)(E).

## DISCUSSION

### I.

Defendant first argues that she was entitled to notice, pursuant to Federal Rule of Criminal Procedure 32(h), of the district court's intention to apply a ten-point enhancement under § 2B1.1(b)(1) instead of an eight-point enhancement as the parties had recommended. Rule 32(h) provides that a court must provide notice of intent to "depart from the applicable sentencing range[.]" Fed. R. Crim. P. 32(h). This argument lacks merit because the parties' recommended guidelines calculation is not the "applicable sentencing range," and the district court's rejection of the parties' recommended guidelines calculation is not a "departure" for purposes of Rule 32(h).

Rule 32(h) applies only to "departure[s]." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). "'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Id.*; *see also United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009) ("Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K."). Neither the district court's rejection of the parties' recommended guidelines nor the district court's variance under 18 U.S.C. § 3553 is a "departure" for purposes of Rule 32(h). *Irizarry*, 553 U.S. at 714. In fact, the district court did not "depart from the applicable sentencing range" at all in this case. To the contrary, the district court carefully calculated the applicable guidelines range on the record, and based Defendant's sentence on that advisory range. Accordingly, Defendant was not due any notice under Rule 32(h).

**II.**

We next review Defendant's sentence for procedural and substantive reasonableness, applying the deferential abuse-of-discretion standard. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

1. Procedural Reasonableness

Procedural reasonableness requires that the district court "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence——including an explanation for any variance from the guidelines range." *United States v. Grossman,* 513 F.3d 592, 595 (6th Cir. 2008) (citing *Gall,* 522 U.S. 38, 50 (2007)). Defendant argues broadly that the district court failed to consider Defendant's arguments for a lower sentence. She challenges the district court's "utilization of a higher guideline range as the starting point," as well as its "inadequate" consideration of the § 3553(a) factors.

To the extent that Defendant argues that the district court committed procedural error by rejecting the parties' recommended guidelines calculation, this argument must fail. First, it is not procedurally unreasonable *per se* for a court to reject the parties' stipulated advisory guidelines calculation——especially where that calculation is inaccurate. Second, the district court clearly and specifically rejected the parties' reasoning behind the "stipulated" amount of loss. It not only disagreed with the government's concession to provide an offset for services rendered, but also disagreed with the parties' mathematical calculations. The court found that the "Narrative of events surrounding Doris E. Lackman," which was submitted by the estate, provided clear support for including $33,302.11 that had previously been omitted—apparently inadvertently.

Likewise, we reject Defendant's argument that the court improperly calculated the applicable guidelines range by applying a ten-point enhancement under § 2B1.1(b)(1)(F). When reviewing a district court's application of § 2B1.1(b)(1), we review the district court's factual finding as to amount of loss for clear error. *United States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011). The district court "need only make a reasonable estimate" of the amount of loss for purposes of § 2B1.1(b)(1). U.S.S.G. § 2B1.1 cmt. n. 3(C). In this case, the district court's finding that the amount of loss exceeded $120,000 was not clearly erroneous. Therefore, the district court's application of a ten-point enhancement under § 2B1.1(b)(1)(F) was not unreasonable.

Finally, Defendant argues that her sentence is procedurally unreasonable because the district court "failed to acknowledge" the factors militating in favor of a downward departure—specifically, that Defendant is a first-time criminal offender with serious medical problems, that Defendant is the sole caretaker for her elderly parents, and that both parties agreed that a 15–21 month sentencing range was appropriate. Quite the contrary, the district court specifically mentioned each of these facts as he went through Defendant's history and characteristics to determine the appropriate individualized sentence. These factors had little mitigating effect, however, in light of Defendant's conduct and subsequent behavior. Though Defendant might have been a "first time criminal" in the sense that she had no prior convictions, the district court mentioned several times that "this was not a one-time thing"——Defendant stole countless times from the victim and various charities over the course of seven years.

In this case, the district court properly calculated the applicable guidelines range, considered each of the § 3553 factors at length, and offered a comprehensive, careful, and

persuasive explanation for the sentence, including the upward variance. Accordingly, Defendant's sentence is procedurally reasonable.

### 2. Substantive Reasonableness

Having found that the district court's sentencing decision is procedurally sound, we now consider the substantive reasonableness of the sentence. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Defendant argues that her sentence is substantively unreasonable because it is arbitrary and greater than necessary. She also asserts that there is no sufficiently compelling justification to support the 9-month variance. We disagree.

The district court's task is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statutory sentencing scheme. 18 U.S.C. § 3553(a). "Because the sentencing judge is in a superior position to find facts and judge their import under § 3553(a), this Court applies a great deal of deference to a district court's determination that a particular sentence is appropriate." *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008) (quotation marks and citation omitted).

In this case, the district judge offered an extensive explanation for why he felt the upward variance was necessary. The court engaged in an extended analysis of the § 3553(a) factors, explaining that Defendant's conduct was particularly reprehensible because she stole from a vulnerable elderly woman who considered the Defendant to be a close friend and trusted her completed. The district court contrasted Defendant's conduct with one-time fraudulent transactions of financial necessity or poor judgment, and specifically admonished Defendant's

pattern of self-serving, fraudulent behavior. The district court unquestionably provided a sufficiently compelling justification to support the 9-month variance.

Moreover, the court's upward variance is not, as Defendant suggests, irreconcilable with the court's three-level reduction for acceptance of responsibility. By pleading guilty to the charged offenses and admitting to wrongdoing, Defendant fulfilled the minimum requirements for the acceptance of responsibility reduction under the guidelines. This is sufficient to justify the court's grant of the recommended three-level reduction.

Although Defendant's guilty plea and shallow apology may be enough for her to qualify for the unopposed reduction under § 3E1.1(a), it does not shield her from an upward variance based in part on her apparent failure to understand "the full extent of wrongfulness" of her conduct. The district court acknowledged that Defendant apologized and took criminal responsibility for the charged offenses, but was troubled by Defendant's repeated characterization of the calculated, intentional, persistent conduct as a "mistake" and mere lapse in judgment. Combined with Defendant's failure to take remedial action, the court found Defendant's lack of overt remorse particularly upsetting given the selfish nature of Defendant's crime. A court can find that a defendant accepted responsibility—for example, by entering a guilty plea—such that a § 3E1.1(a) reduction is appropriate, while still considering the shortcomings of Defendant's apology in applying an upward variance. In this case, the upward variance and offense level reduction are reconcilable.

Finally, we reject Defendant's argument that the upward variance is impermissibly based on the duration of the criminal conduct. The court mentioned the "ongoing" and "escalating" nature of Defendant's conduct to highlight the ridiculousness of Defendant's argument that her behavior was a "mistake." (R. 26, at 78.) The district court did not impose a variance based on

the sheer duration of the crime, but rather on the fact that Defendant continued to characterize it as a mere "mistake" despite the fact that Defendant's conduct was escalating over the course of many years.

## CONCLUSION

For the reasons set forth herein, we **AFFIRM** the sentence imposed by the district court.